ORSON LUIN, Appellant, v. CHICAGO GRILL COMPANY.

**Evidence:** SCOPE OF CROSS-EXAMINATION. In a suit for the value of
1 personal services, the plaintiff having testified in chief that there was no agreement as to his compensation, it was competent to show on cross-examination a state of facts tending to contradict his direct testimony.

**Corporations:** EMPLOYMENT CONTRACT: ACQUIESCENCE. Where the
2 officers of a corporation, with full knowledge of an arrangement previously made with plaintiff to manage the corporation business, acquiesce therein and permit him to enter upon the employment on the basis proposed, the arrangement becomes conclusive on both parties.

**Evidence:** SCOPE OF RE-EXAMINATION. Where matters are for the first
3 time developed on cross-examination and the answers, having reference to certain conversations, were in the nature of inferences or conclusions, the right on re-examination to have the conversations detailed should not be denied, to the end that the court and jury may draw the conclusion therefrom rather than the witness.

**Submission of issues.** Where the evidence in a suit for services and
4 money advanced tended to show that the money plaintiff had drawn was for his living expenses exclusive of compensation, and that he had in fact advanced money to his employer, it was error not to submit his claim.of recovery to the jury.

*Appeal from Polk District Court.*— HON. W. H. McHENRY, Judge.

SATURDAY, APRIL 11, 1908.

ACTION for the value of services rendered as manager

of the defendant corporation. Verdict was directed for the defendant, and judgment entered accordingly. The plaintiff appeals.— *Reversed.*

*Carr, Hewitt, Parker & Wright,* for appellant.

*Clark & Byers,* for appellee.

LADD, C. J.— The plaintiff acted as general manager of the business of the defendant (operating a restaurant), continuing in that capacity from April 2, 1904, till August 21, 1905, and prays compensation, at the rate of $200 per month. The petition admitted the receipt of $1,106.53, and alleged the advancement of $748.77 to the company. The defendant first denied generally the allegations of the petition, and then admitted the employment of plaintiff, but averred that this was at the agreed price of $50 per month; that he had worked but fifteen months and twenty-one days; that he had withdrawn from the company's funds $2,118, and demanded judgment for a balance of $1,333. All of this was denied. So that the employment was admitted, and the only issues were (1) whether this was at the agreed price of $50 per month or without compensation being fixed; (2) if the latter, what was the reasonable value of the services rendered; (3) had he advanced money to the company, and, if so, how much; and (4) how much had he withdrawn from the company. The last two issues concerning the rulings relating to which, save in directing a verdict, there is no controversy, may be eliminated. The others should be borne in mind in passing on the court's rulings on the admissibility of evidence.

The plaintiff testified that no salary was agreed upon,
1. EVIDENCE: and that his services were reasonably worth
scope of $200 per month. On cross-examination no
cross-examination. inquiry was made with reference to any agreement with the company or its officers concerning his compen-

sation, but, over objections as not cross-examination, irrelevant, and immaterial, he was permitted to testify, in substance, that he organized the company for the purpose of buying out the restaurant and its business; that he arranged with the several subscribers for stock, except Spreng, from whom the purchase was made, that they should advance $300 each, and the company should issue stock for that face value to each, and each should receive and hold the stock as collateral security for the loan of that amount to him; that the stock should be retired with the profits of the business, and, when this was accomplished, he should own the property, and that this, with his living, should be his compensation; that the talk that he was to have his living was prior to and at the time of the organization, and that upon this basis he took charge of the property and managed the business. The evidence was material and relevant to the issue, as it tended to contradict the evidence in chief that there had been no understanding as to compensation for plaintiff's services, and we think it was elicited on proper cross-examination. The direct evidence was confined to a denial that there had been any agreement concerning the compensation plaintiff was to receive, so that it was proper to bring out on cross-examination any facts and circumstances bearing upon any understanding between the parties with reference to what he was to be paid for his services. Even though it developed that the arrangement was different than averred in the answer, such evidence tended to sustain the general denial, and, as it was contradictory of that given in chief, was admissible. The matters disclosed tended to contradict the *prima facie* case made out on the direct examination of the witness, and, for this reason, the court rightly permitted the cross-examination. *Novotny v. Danforth,* 9 S. D. 301 (68 N. W. 749); *Reese v. Bell,* 138 Cal. 285 (71 Pac. 87); *State v. Hibner,* 115 Iowa, 48; *Ferguson v. Rutherford,* 7 Nev. 385.

Appellant suggests that the conversations were not binding on the company. Possibly the company could have

declined to carry out the arrangement plaintiff had made

2. CORPORATIONS:
employment
contract:
acquiescence.

with every shareholder to induce him to become such, but the record shows that it did not do so, but rather, with full knowledge on the part of its officers, acquiesced in that arrangement by permitting plaintiff to enter upon his employment and manage the affairs of the company on the basis he had proposed. According to the witness, this talk was had not only prior to, but at the time of, the organization of the company. But one shareholder then was present. Plaintiff was there with the proxies of all the others, and the two elected the officers, including plaintiff, as secretary and general manager, and, on cross-examination, he testified to having then said to the one shareholder present what he had to the others concerning his compensation, and that he took charge of the business on that basis and managed it as his own. This testimony, in the light of his obligation as promoter of the company to act in entire good faith not only toward it, but the subscribers as well (*Hinkley v. Sac Oil & Pipe Line Co.*, 132 Iowa, 396), leaves no doubt as to the nature of his employment and the compensation he was to receive.

II. On re-examination, counsel for plaintiff asked him with which of the defendants he had a conversation; to state what the conversation was; whether the conversation

3. EVIDENCE:
scope of re-
examination.

was before or after the company was organized; and to state the conversation had about taking stock. To each of these questions the objection that the witness had already testified, and that he ought not be permitted to change his unequivocal statements, was sustained. Counsel suggested to the court that he desired to show what conversations had taken place, and that, if the witness were allowed to relate the same, he would testify, in effect, that he had asked the subscribers to take stock, and had said that he would pay ten per cent. interest until there was no lien of any kind. The court responded that he had testified that the stock was issued to the subscribers on

the understanding that it was security for money loaned, and that he was to take it up, and that there was nothing in his answers in the nature of opinions or conclusions of either law or fact. Thereupon counsel for plaintiff insisted that the witness did not understand, and that whether the transactions constituted a loan was to be determined from the conversations had. Counsel then asked whether there was anything said between him and any of the subscribers as to whether his living should be in full for his services; whether there was any arrangement as to the compensation to be received if the parties did not retain the stock, and refused to transfer it to him; and as to whether there was any conversation with any of the directors or with the board of directors after the organization had been completed. Objections were sustained as before. The rulings were too narrow. The answers on cross-examination were in the nature of inferences or conclusions, as that the money had been advanced by the subscribers as a loan, and the stock was to be issued as collateral security. This had been brought out for the first time on cross-examination, and counsel for plaintiff had the right to insist upon re-examination that the conversations be given to the end that the court and jury, rather than the witness, might determine whether the arrangement amounted to a mere loan, and he was merely managing his own business, and was to receive no pay from the corporation, or whether these were inducements or propositions only held out to the subscribers, and expressive only of what he believed could be accomplished, and that he mentioned that he would have to have his living out of the business without agreeing upon that as his compensation, as his counsel insisted the testimony, if allowed, would disclose. No reason appears for inferring a purpose to " change his unequivocal answers," but rather to state what was said in order to ascertain whether these were well founded. The court erred in sustaining the objections and thereby refusing to allow any

re-examination on matters brought out for the first time on cross-examination.

III.   The answer did not allege that the plaintiff was owner of the property purchased, nor that the money alleged to have been taken by him was in payment of property for

4. SUBMISSION
OF ISSUES.

himself.   The evidence on the part of plaintiff tended to prove that the money withdrawn from the company had been used for living expenses, and, besides this, that plaintiff had advanced over $700 for the benefit of the company.   It was error not to submit to the jury his claim of recovery therefor.— *Reversed.*