## FIELDS v. VICTOR BUILDING & LOAN COMPANY.

No. 9325—Opinion Filed Oct. 8, 1918.

(175 Pac. 529.)

### 1. Corporations—Directors—Vote on Resolution—Qualification.

A director, whose interest in the matter disqualifies him from voting upon a resolution relating thereto, cannot be counted for the purpose of ascertaining whether a quorum is present when the vote is taken, since a director so disqualified loses pro hac vice, his character as a director.

### 2. Same.

V. B. & L. Co., a corporation, had a board of directors consisting of five members. Three members of the board of directors held a meeting and passed a resolution fixing the salary of the president and general

manager of said corporation for the year 1914. The president and general manager was one of the directors attending said meeting. Held, that said resolution was void for the reason that a quorum of the directors qualified to vote on said resolution was not present at said meeting.

**3. Corporations—Acts of Officers—Ratification.**

A corporation cannot ratify an act of its officers of which it had no knowledge, so as to be estopped in an action between such corporation and one of its officers, who has withheld knowledge of such acts from the board of directors of such corporation.

**4. Corporations—Salary of Officers—Right of Action.**

A president and general manager of a corporation cannot maintain an action based on a quantum meruit for past services rendered as president and manager when no compensation for such services is provided in the charter or by-laws and no compensation is fixed by any valid resolution passed, prior to the rendition of such services, providing for compensation for such services.

(Syllabus by Davis, C.)

Error from Superior Court, Muskogee County; H. C. Thurman, Judge.

Action by the Victor Building & Loan Company against William P. Fields, with counterclaim by defendant. Judgment for plaintiff, motion for new trial overruled, and defendant brings error. Affirmed.

Ezra Brainerd, Jr., and William Hatch Davis, for plaintiff in error.

Rutherford & Cosgrove, for defendant in error.

Opinion by DAVIS, C. This action was begun in the superior court of Muskogee county, Okla., by defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, hereinafter referred to as defendant, to recover the sum of $1,915.84. It is alleged in the petition that plaintiff is a building and loan association with its principal place of business at Muskogee, Okla.; that it was organized on or about the month of March, 1912; that defendant was its active president from the date of its organization until the 20th day of January, 1916; that defendant was the promoter and moving spirit of said organization, and, as an inducement to others to buy stock therein, defendant promised and represented that he would perform any and all services rendered by him gratuitously and would keep the office of plaintiff corporation in defendant's office until he had built up and expanded plaintiff's business and acquired for it such increased financial strength that plaintiff, in

the judgment of its directors, could afford to pay for such services; that on or about the month of March, 1915, defendant presented to plaintiff a claim for services rendered as manager and for alleged items of expense, office rent, telephone, and light charges alleged to have been paid by defendant for the years 1912, 1913, and 1914, which claim amounted to $1,700; that when said claim was presented defendant represented to plaintiff that he had received no compensation for his services or for money expended in the business, and that, despite the agreement under which defendant procured the subscriptions for stock, the plaintiff, acting by and through its officers, allowed defendant the sum of $800 as payment in full of all items claimed by defendant. It is further averred that, after defendant severed his relation with said company, an examination of the books and records disclosed that defendant had during the year 1914 received and paid to himself the sum of $1,423.42; said sum representing fines and membership fees for the year 1914. Defendant filed an answer consisting of a general denial and also a counterclaim for $1,800, which sum defendant alleges to be due for services rendered plaintiff as president and manager of plaintiff for the year 1915. On the issues thus joined, the cause was tried to the court without the intervention of a jury. At the conclusion of the evidence, judgment was rendered in favor of plaintiff for the sum of $1,423.42. A motion was filed for a new trial and overruled. Defendant, feeling aggrieved at the action of the court, prosecutes an appeal to this court to have said cause reviewed.

It appears from the evidence that the defendant was the promoter who organized the Victor Building & Loan Company in 1912 and became its first president and general manager and continued in this capacity until the 20th day of January, 1916. The first difference appears to have arisen between plaintiff and defendant in the early part of 1915. This was occasioned by a claim which defendant presented to plaintiff in the sum of $1,700. When this item was presented to the board of directors, it was rejected until such time as defendant might call a meeting of the stockholders and secure their recommendation for the payment of this claim. There seems to have been a meeting of the stockholders pursuant to a notice published in a newspaper. When the matter was finally presented to the directors on the 26th day of May, 1915, a considerable protest was made on the ground that the defendant had promised and agreed to perform the services, for which he was then seeking pay,

free of charge; but after considerable wrangling it was finally agreed that as a compromise defendant should be allowed the sum of $800. This sum was accepted by defendant, and no further trouble arose until defendant severed his relations with plaintiff, and it was then ascertained for the first time by the board of directors that defendant had received and paid to himself the sum of $1,423.42 during the year 1914. This sum consisted of fines and membership fees collected for that period.

It was agreed at the trial of this cause that said sums was received by defendant and appropriated to his own use. But defendant has attempted to justify his action in this matter by reason of a purported and alleged resolution of the board of directors made on the 28th day of January, 1914, at which time a resolution was passed allowing the defendant the fines and membership fees collected for 1914 as his compensation for acting as president and manager of said company for said year. The validity of this resolution is attacked by plaintiff on the ground that it was a void act, in that a quorum was not present at the time it was passed, and that it conferred on defendant no authority to thus appropriate this fund to his own use as a salary. On the date when this resolution was passed, the board of directors consisted of Mr. Fields, Mr. Gibbons, Mr. Duncan, Mr. Merchant, and Mr. Fink. Those present when said resolution was passed were Mr. Fields, Mr. Gibbons, and Mr. Merchant. The court made a finding of fact and conclusion of law at the trial. The finding of fact in reference to this meeting is as follows:

"The purported resolution of January, 1914, attempting to provide for compensation for the defendant for the year 1914, appears to have been passed at a meeting of the directors at which only Fields, Merchant, and Gibbons three of the five directors of the plaintiff company, were present, and so far as the evidence in this case shows, this was the first attempt of the directors of said company to fix any compensation for the defendant. Such purported resolution was invalid because the presence of Fields, the beneficiary, was necessary to make a quorum of the board of directors at that meeting, and without him there was no quorum, and because the defendant Fields, although a director, was disqualified from acting as such director during the consideration of the purported resolution on account of his personal interest therein and should not be counted in making up a quorum for the consideration of such resolution."

There is no controversy but that the finding of the court as to the number of directors present when said resolution was passed

is correct and that there were five directors of plaintiff at that time. Was this resolution valid? Could the defendant claim any right to appropriate the money which he admits he took for the year 1914 under and by virtue of this resolution? This must be answered in the negative.

Section 1252, Rev. Laws 1910, was taken from the Dakota statute, and reads as follows:

"The corporate powers, business and property of all corporations formed under this chapter must be exercised, conducted and controlled by a board of not less than three nor more than eleven directors to be elected from among the holders of stock or where there is no capital stock, then from the members of such corporation. Directors of corporations for profit must be holders of stock therein in an amount to be fixed by the by-laws of the corporation. Directors of all other corporations must be members thereof. Unless a quorum is present and acting, no business performed or act done is valid as against the corporation."

In the case of Crocker v. Cumberland Mining & Milling Co., 31 S. D. 137, 139 N. W. 783, the Supreme Court of South Dakota had under consideration this section, and in construing said section the court said:

"The appellant contends that the court's conclusions of law were unsupported by the findings. These conclusions were to the effect that appellant was not entitled to recover; that the alleged contracts growing out of the resolutions allowing salary were illegal and void; that there was a certain sum due the corporation under the accounting; and that the default judgment should be vacated. The appellant is certainly in error in such contention. The law is that, while a director may enter into a binding contract with the corporation, when such contract is in all things fair and equitable, and the corporation is represented by a majority of its directors, each of whom is acting as a free agent and under no controlling influence or restraint on the part of the contracting director, yet, even if there is such majority of free and independent directors acting for the corporation, such contract will not be binding upon the corporation if is is unfair or inequitable; and, furthermore, no matter how fair and equitable the contract may be, it will be void, unless there is a majority of free and independent directors acting for such corporation. It follows that, when a resolution is passed in which one of the directors is interested, if it is passed by the vote of such director, or by the vote of any other director who is under his controlling influence, without which vote or votes there would not have been a majority in favor of said resolution, or if, without the presence of such interested director and such directors as may be under his influence and

control, there would not have been left a quorum of the board of directors, then, in either of such cases, such resolution would be absolutely void as against the corporation."

The construction placed upon section 1252, Rev. Laws 1910, by the Supreme Court of South Dakota, while not binding on this court, is persuasive and commends itself to us as sound and wholesome. This construction is the one followed by a great majority of the courts. In the case of Adams v. Burke, 201 Ill. 395, 66 N. E. 235, the Supreme Court of Illinois, speaking of this question, stated the following rule:

"The law is that, where a salary or compensation is voted to an officer, the resolution is illegal if it is carried by his vote or produced by his influence, where he has a controlling interest. McNulta v. Corn Belt Bank, 164 Ill. 427 [45 N. E. 954, 56 Am. St. Rep. 203];Cook on Stock and Stockholders. * * *"

In the case of Enright v. Heckscher, 240 Fed. 863, 153 C. C. A. 549, Rogers, C. J., speaking for the court, said:

"A director, whose interest in a matter disqualifies him from voting upon a resolution, concerning it, cannot, according to the better opinion be counted for the purpose of ascertaining whether a quorum is present when the vote is taken. A director so disqualified by personal interest loses, pro hac vice, his character as a director, and so cannot be counted. That is the law of New Jersey. * * * And it is supported by the weight of authority in other jurisdictions."

In Re Webster Loose Leaf Filing Co. (D. C.) 240 Fed. 779, Davis. D. J., speaking of this question, said:

"All of the directors constituting a quorum must be qualified to act. If one of the directors whose presence is necessary * * * to constitute a majority of a quorum is disqualified by reason of his personal interest, any act done by the body is invalid. 10 Cyc. p. 777; Cook on Corporations (7th Ed.) 713a; Van Hook v. Somerville Mfg. Co., 5 N. J. Eq. 159. The rule rests upon the broad principle that it is the duty of each director in acting for the corporation to do so in the best interest of the corporation. His duty to the corporation is first. It is a duty he cannot perform if his own interest is adverse to that of the corporation. So insidious are the promptings of self-interest, and so great is the danger that it will override duty, when brought into conflict with it, that sound policy requires that such contract should not be enforced or regarded. He occupies the position of a judge passing upon his own case.

"So strictly is this principle adhered to that no question is allowed to be raised as to the fairness or unfairness of the contract so entered into. In such cases, the court will not pause to inquire whether a director or trustee has acted fairly; * * * being interested in the subject-matter, he may not as a trustee or director deal with himself, and thus be subjected to the temptation to advance his own interests."

Cases without number might be cited in support of this doctrine. That a man cannot serve two masters is a maxim peculiarly applicable to a director of a corporation. His position is that of a trustee of an express trust. The interest of the corporation is first, and his primary purpose should be to preserve the assets of the corporation for the benefit of the stockholders, instead of dissipating them for his individual interest. Should any other rule obtain, it would be unsafe for any man to invest in such institutions thus controlled by selfish and unscrupulous directors. With all the safeguards that the laws afford for the protection of stockholders, it is not in every instance that the courts are able to protect those who have invested their money in institutions controlled by and under the supervision of directors. The betrayal of the trust confided to them frequently passes by without detection. But what must be said when a director comes into court and admits appropriating $1,423.42 of the funds intrusted to him and seeks to justify such action by a resolution passed by his vote, and without which it could not have been done. The court was correct in holding this purported resolution void. It received more consideration than it deserved. Defendant admits that the only authority he had for appropriating this sum of money to himself was by virtue of this resolution.

It is urged by the defendant that plaintiff has by its acts ratified the resolution passed by defendant and two other directors on the 28th day of January, 1914. The trial court found that no ratification was ever made of this illegal act for the reason that the matter was never brought to the knowledge of the corporation until after defendant had severed his relations with plaintiff. This finding of the court is supported by the evidence. In fact, there is not one word or act of the board of directors that tends in any degree to warrant the contention of defendant on this point. The entire transaction shows otherwise. As soon as it was disclosed that this money had been used by defendant in the manner admitted by him, an action was immediately instituted to recover this sum. The matter was kept concealed from plaintiff by defendant so long as he had charge and control of the books, and

not until he surrendered the written evidence of said transaction and severed his relation with it did the directors have any knowledge of what had been done. In order to constitute a ratification, conceding without deciding that it was such an act as could be ratified, the burden of proof was on defendant to show that a ratification had been made with full knowledge of all the material facts. This he has signally failed to do. Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161; Burton v. Lithic Mfg. Co., 73 Ore. 605, 144 Pac. 1151; Camden Land Co. v. Lewis, 101 Me. 78, 63 Atl. 523.

It further appears from the record that defendant, when the $800 was allowed him, told the board of directors that he had not received one dollar compensation for his services and money expended in behalf of plaintiff. This occurred on the 26th day of May, 1915. This representation was the inducement that finally moved the plaintiff to allow the $800. We are led to believe, from the disclosures made of that meeting at which this sum was allowed, that, if defendant had made known the fact that he had appropriated $1,423.42 to his own use for the year 1914, his relations with plaintiff would have been severed at an earlier date than they were.

Complaint is made by reason of the fact that the court found against defendant on his claim for $1,800 for services rendered the company as president and manager for the year 1915. This sum was sought on the theory that, although there was no contract with defendant for compensation for his services, plaintiff would be liable for the reasonable value thereof. This contention is without merit. In order to sustain this contention, it was necessary for defendant to allege and prove that it was provided, either by the charter or by-laws. that the president and manager of plaintiff was to be compensated for his services. Neither the charter nor by-laws were offered in evidence, and the presumption is, in the absence of a showing to the contrary, that they contained no such provision.

Thompson, in his valuable work on Corporations (volume 2, par. 1717, p. 802). states the law on this question as follows:

"As a general rule, directors are not entitled to compensation or salary for official services rendered unless such salary or other compensation is provided for in the charter or by-laws; or unless there is an express resolution or agreement adopted or made by the board of directors acting as such. In the absence of such a provision or agreement, and except as otherwise shown, a director, and a president, secretary or treasurer, when a stockholder or director, cannot recover pay for official services. In concluding an opinion on this subject one of the judges of the West Virginia court said: 'The authorities have led my mind to the conclusion that the law raises no implied promise to pay compensation to directors, presidents or vice presidents of a private corporation in the absence of provision in by-law or order of directors. They are trustees charged with the funds, and cannot recover on a quantum meruit.' The Supreme Court of Pennsylvania in an early case went so far as to say on this subject: 'If the services of the director become important to the corporation, let him resign and enter into its employment like any other man. If it be proper that directors generally should receive compensation, let it be so provided in the organic act which creates the body. Those who commit their money to its care will then do it with their eyes open. Until this be provided, there is no reason in law or morals for allowing their property to be taken without their knowledge or consent.'"

The same author in volume 2, par. 1729, p. 815, speaking of the right of officers to recover on a quantum meruit, says:

"The officers stand in the same relation to the corporation as the directors; consequently, as in the case of directors, the law will not imply a promise by a corporation to pay its officers for their usual and ordinary duties, in the absence of any provision in the charter or by-laws, or any contract or agreement on the subject, but will presume that such services were rendered gratuitously. For example, the law implies no contract to pay the president for services as such and for consulting with and advising other officers and employes of the corporation. No implied promise can be inferred from the fact that the services are beneficial to the corporation; and while, in some relations, a request might be implied from the beneficial character of the service, yet no such inference is authorized in the case of gratuitous services performed by a person in the line of his legal duty. It is a corollary of the main proposition that officers cannot appropriate the corporate funds in payment of their services without proper authority."

The foregoing text is supported by a great weight of authority and is peculiarly applicable to the facts in this case. Hence it follows that there was no error in the action of the trial court in refusing to allow defendant any sum for his services. The pleadings of defendant did not bring him within any provisions that constitute an exception to the foregoing rule, and neither did the evidence. The alleged counterclaim did not state facts sufficient to warrant any evidence being admitted thereunder.

It is urged that the court committed error

in permitting evidence to be introduced of a certain conversation had between defendant and Rutherford relative to the fact that defendant was not to charge any sum for his services as president and manager of plaintiff, and that said statement induced Rutherford to subscribe for stock in the company. This entire conversation was immaterial and did not affect the rights of plaintiff and defendant either way. If defendant was entitled to any compensation, it was by virtue of the charter, by-laws, or some legal resolution passed by the board of directors.

The action of the board of directors in allowing defendant $800 was a gratuitous gift, as plaintiff was neither legally or morally bound to allow defendant any sum whatsoever for services already rendered under an express agreement that no charges should be made; but, as this action was recommended by the stockholders, there is no blame to be attached to the action of the directors in carrying out their express desire in the matter.

We therefore recommend that the judgment be in all things affirmed.

By the Court: It is so ordered.