**CLYSEROL LABORATORIES, INC., an Oklahoma Corporation, Plaintiff in Error,**

**v.**

**Richard H. SMITH, Defendant in Error.**

**No. 38888.**

Supreme Court of Oklahoma.

May 23, 1961.

**100**

Albert D. Lynn, Oklahoma City, for plaintiff in error.

Robinson, Shipp, Robertson & Barnes, by J. M. O'Loughlin and J. Thornton Wright, Jr., Oklahoma City, for defendant in error.

BLACKBIRD, Vice Chief Justice.

This appeal involves the right of defendant in error, hereinafter referred to as plaintiff, to recover a certain judgment for salary claimed to be due him as manager of the corporation appearing herein as plaintiff in error, but hereafter referred to as defendant.

Plaintiff and his associate, Howard R. Sullivant, were stockholders and directors of the defendant corporation in 1957, when it was having financial difficulties. At a special meeting of defendant's board of directors, on December 17, 1957, plaintiff and Sullivant presented to it a proposal, under the terms of which (among others) twenty-five thousand shares of defendant's stock would be issued to each of them at its par value of $1 per share; one-sixth of said stock's purchase price was to be paid upon defendant's acceptance of the proposal, with payment of the remainder deferred as provided therein; plaintiff was to assume active management of the defendant corporation; and the proposal was to become an "agreement", upon return to plaintiff and Sullivant of a copy of it with defendant's acceptance endorsed thereon, either on or before January 1, 1958.

According to the minutes of said board meeting, a motion to accept the proposal carried, or was passed, by affirmative vote of all directors present, except R. C. Boyer, who, at that time, was defendant's manager. According to said minutes, after passage of the motion, a discussion of salaries was had and it was agreed that " * * * the present salary and allowance authorization for Mr. Boyer remain in effect until 28 February, 1958, and that the salary of Mr. Smith (plaintiff) be determined at a later date."

Thereafter, as contemplated in the above described proposal, defendant's acceptance of it was evidenced by endorsement of its president, Mr. John W. Hunt, on or before January 1, 1958. Plaintiff, on the same date, assumed defendant's management, and he and Sullivant paid the first installment of $8,333.33 on, and received, the additional stock contemplated in said agreement.

Thereafter, according to a letter addressed to defendant's counsel, the directors met again on January 14, 1958, and passed a motion that plaintiff be paid a salary of $800 per month, effective as of January 1, 1958.

On or about January 31, 1958, one of defendant's stockholders, W. R. Boyington, instituted Cause No. 143279, in the District Court of Oklahoma County, on behalf of himself and other stockholders, against defendant and its directors, alleging, in substance, under one cause of action, that the hereinbefore mentioned directors meeting of December 17, 1957, was a nullity because valid notice thereof was not issued; that the hereinbefore described agreement with plaintiff and Sullivant was likewise a nullity; and praying that those two individuals be required to surrender into court, for cancellation, the stock certificates they had been issued pursuant to said alleged void agreement. Under a second cause of action, Boyington alleged, among other things, that the defendant corporation was being mismanaged and prayed that a receiver be appointed to take charge of its business and affairs.

On or before institution of Cause No. 143279, supra, plaintiff received from the defendant corporation a check for $790 in payment of his salary as manager for the month of January, 1958 (less an immaterial deduction); and, about the same time, he and Sullivant filed an answer in said cause, in which they admitted that the notice given for the board of directors meeting of December 17, 1957, was not in conformity with the corporation's by-laws, and, among other things, tendered into court the stock certificates involved in that controversy. In a cross petition, they asked

that their hereinbefore described agreement with the corporation be cancelled, and that they recover judgment against it for the $8,333.33 they had paid on the stock, as aforesaid.

After a hearing on the appointment of a receiver in said Cause No. 143279, had been scheduled for February 7, 1958, but postponed, and plaintiff's services as defendant's manager had terminated on February 10th thereafter, defendant's directors met on February 12th, in the office of the attorney that had been engaged to defend it in said suit. According to its minutes, the "question before" said meeting was: Will the Board rescind the contract made with plaintiff and Sullivant in view of said suit, and return the money they had paid on their stock, less the above-mentioned $790 previously paid as salary, or continue to fight the suit? By a motion made and passed at this directors' meeting, it was decided that their previous action of December 17, 1957, "in regard to the employment * * " of plaintiff and Sullivant "* * * be rescinded * * *"; that the stock issued to them "* * * pursuant to said meeting * * * be returned to the company for cancellation"; that the (approximate) $8,334, that had been paid thereon, be returned to plaintiff and Sullivant, less the above-mentioned $790, according to procedure outlined in the motion. When the latter exchange of money for stock was thereafter carried out, Cause No. 143279, supra, was dismissed with prejudice, on February 20, 1958.

A motion made at a special meeting of defendant's stockholders on March 3, 1958, to repay, or return to him, plaintiff's salary for the month of January, and to pay him for part of February, 1958, at the same rate, failed of passage. A week later plaintiff instituted the present action to recover said sums, totalling $1,085.71, from defendant, with interest and costs, plus another sum, now immaterial.

In its answer, defendant pleaded a qualified general denial, and special denials that plaintiff ever took over its active management or that it was indebted to him in any

sum. In an amendment to said answer, defendant alleged additionally that the subject contract had been rescinded.

At the trial before the court, without a jury, Mr. Hunt, defendant's hereinbefore mentioned former president, corroborated the uncontradicted testimony of plaintiff that he had performed the services for which he was seeking payment. It was also established beyond contradiction that plaintiff's salary claim for January, 1958, was not included in the settlement of Cause No. 143279, supra, and that said cause was dismissed without prejudice to his right, if any, to pursue any remedy he might have to recover on it.

At the close of the evidence, defendant's motion to amend its pleadings to conform to the proof was sustained, and judgment was thereafter rendered for plaintiff in the sum of $1,085.71, with interest and costs. After the overruling of its motion for a new trial, defendant perfected the present appeal.

For reversal defendant urges the single proposition that the notice for the hereinbefore mentioned directors' meeting of December 17, 1957 (at which the proposal that plaintiff be employed as its manager was approved, as aforesaid) was issued only 12 days, rather than the 15 days, prior to said meeting, required for all such meetings by Art. IV, sec. 4 of defendant's by-laws, and, for that reason, said meeting, as well as the action taken thereat with reference to plaintiff's employment, was a nullity.

■ We deem it unnecessary to detail defendant's arguments, as, in our opinion, they are completely answered by plaintiff's contention to the effect that defendant is in no position, after having accepted the benefits of the subject contract and plaintiff's services as its manager, to avoid its obligations to pay him therefor. Inherent in such argument are considerations identical with, or akin to, those involved in equitable estoppel, or estoppel in pais, which applies to corporations as well as individuals. See 13 Am.Jur., "Corporations", secs. 843, 936, 972, 981–985. Thus, in Oklahoma City General Hospital v. Weathers, 147 Okl. 25, 294 P. 98, after quoting from other cases to the same effect, we held:

> "Where the president of a corporation enters into a contract, and *the corporation permits the services to be rendered under the contract, and receives the benefits of such services, it cannot escape payment for such services on the ground that* the president entering *into the contract* on behalf of the company *had no authority* so to do."

> "A voluntary acceptance of the benefits of a contract is equivalent to consenting to all of the obligations arising from it so far as the facts are known or ought to be known to the person or corporation accepting the same." (Emphasis ours.)

Under this doctrine, the fact that its board of directors may have defectively committed the defendant corporation to entering into the contract for plaintiff's services, is no defense to an action of this character, after defendant, in possession of all of the facts, has acquiesced in their being rendered pursuant to the contract, and has received the benefit thereof. Thus, in Luin v. Chicago Grill Co., 138 Iowa 268, 115 N.W. 1024, 1025, it was held:

> "Where a corporation, with full knowledge on the part of its officers of an arrangement previously made with plaintiff to manage the corporation's business, acquiesced therein, and permitted plaintiff to enter on his employment and manage the affairs of the company on the basis proposed, such arrangement became conclusive on both plaintiff and the corporation."

The evidence of the present case renders it appropriate for application of the same principles applied in the above-quoted cases. It shows, without contradiction, that plaintiff assumed his duties as defendant's manager, beginning January 1st, and continued to perform them all that month, and thereafter, until February 10, 1958, apparently

with the full knowledge of defendant's stockholders, as well as its directors. At least, there is no claim to the contrary. Nor is there any claim that, after plaintiff had done this, and the defendant corporation had issued and delivered to him its check for his January salary, the parties' agreement had not become, at least partially, performed, or executed. There is no evidence that, even after Cause No. 143279, supra, was filed, defendant's board of directors did not continue to acquiesce in, and to benefit from, plaintiff's employment, until their meeting of February 12, 1958. Their attempt, at this latter meeting, to rescind their previous action of December 17, 1957, came too late. Plaintiff then had already performed the services for which he later sought payment. It is not necessary that defendant's said conduct constitute a "ratification" in the strict sense of the word. The language of the correct rule is that, under such circumstances, the corporation will be "deemed" (in the legal sense) to have "ratified" the alleged unauthorized arrangement. See the quotations from Pixley v. Western P. R. Co., 33 Cal. 183, 91 Am.Dec. 623, and Goodwin v. Central Broadway Bldg. Co., 21 Cal.App. 376, 131 P. 896, appearing on pages 1457 and 1458, of the Annotation in 7 A.L.R. beginning at page 1446.

There is no merit, under facts like those existing here, in defendant's suggestion that the same rule does not apply to a stockholder and director that applies to parties not so connected with the corporation. In connection with this, and related matters, see 13 Am.Jur., supra, section 1030. This case is readily distinguishable in several decisive respects from Fields v. Victor Bldg. & Loan Co., 73 Okl. 207, 175 P. 529. It is also quite different from Waterman v. Chicago & I. R. Co., 139 Ill. 658, 29 N.E. 689, 15 L.R.A. 418, wherein Waterman, the plaintiff, did not perform all of the duties of the office of president, to which he claimed to have been elected, and his exclusive right to that office was in dispute all of the time he claimed it.

As we have carefully examined the record, and upon consideration thereof and defendant's arguments, have found no cause for reversing the judgment herein appealed from, the same is hereby affirmed.