**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 9 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

YU KIKUMURA,

      Plaintiff-Appellant,

v.

JOHN M. HURLEY, E. J.
GALLEGOS,

      Defendants-Appellees,

_____

UNITED STATES OF AMERICA,

      Intervenor.

No. 99-1284

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 98-B-1442)

Philip J. Weiser, University of Colorado School of Law, Boulder, Colorado, for
Appellant.

Melanie Bailey Lewis, of Hall & Evans, (Josh A. Marks with her on the briefs),
Denver, Colorado, for Appellees.

Matthew M. Collette, Appellate Staff Attorney, (Michael Jay Singer, Appellate
Staff Attorney, with him on the briefs), Civil Division, Department of Justice,
Washington, D.C., for the Intervenor and for Appellant.

Before **EBEL, HOLLOWAY,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Plaintiff, a federal prisoner, brought suit against Defendants, prison wardens, for their denial of his requests for certain pastoral visits, alleging violations of his First and Fifth Amendment rights and statutory rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1. Plaintiff moved for a temporary restraining order and a preliminary injunction preventing Defendants from denying the requested pastoral visits. The district court denied Plaintiff's motion, reasoning that Plaintiff had not demonstrated a substantial likelihood of success on the merits or that he would suffer irreparable harm absent an injunction. This court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) to consider Plaintiff's appeal of the district court's denial of his motion for a preliminary injunction. Because the district court committed legal error in holding Plaintiff did not have a substantial likelihood of success on his RFRA claim and would not be irreparably harmed absent an injunction, this court **affirms** in part, **reverses** in part, and **remands** to the district court for further proceedings consistent with this opinion.

-2-

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff-appellant Yu Kikumura is an inmate in the United States Penitentiary, Administrative Maximum, at Florence, Colorado (the "Penitentiary"). Defendant John Hurley is Warden at the Penitentiary, and Defendant E.J. Gallegos is an Associate Warden at the Penitentiary. In early September 1997, the Reverend C. Harold Rickard, a retired United Methodist minister, sent a letter to Plaintiff. Rickard explained in the letter that he had heard about Plaintiff through the Reverend S. Michael Yasutake, a mutual friend of Plaintiff and Rickard, and that he had served as a missionary in Japan for numerous years. Rickard asked Plaintiff, who is originally from Japan, if Plaintiff would accept a pastoral visit from him. Plaintiff replied to Rickard, indicating that he would welcome the visit and encouraging Rickard to contact prison officials to request the visit. Rickard's request to visit Plaintiff was denied by prison officials.

During the next several months Plaintiff, Rickard, and Yasutake repeatedly contacted prison officials, hoping to persuade them to allow pastoral visits from Rickard.[1] On December 23, 1997, Defendant Gallegos denied the requests.

---

[1]During this time Plaintiff also requested pastoral visits from two other Christian ministers who had served in Japan as missionaries. As the denial of these pastoral visits raises many of the same issues as the denial of the visit by Rickard, for simplicity this opinion will refer only to Rickard.

Defendant Hurley then sent letters to Plaintiff and Yasutake explaining that the requests were denied because they did not meet the criteria for pastoral visits established by Bureau of Prisons ("BOP") regulations. *See* 28 C.F.R. § 548.19. Defendant Hurley interprets the regulations to allow pastoral visits if (1) the inmate initiates the request and (2) the clergy person or representative is from the inmate's faith group. According to BOP regulations, inmates are also allowed non-pastoral visits from representatives of civic and religious organizations if there is an established relationship prior to confinement, although wardens are given the power to waive the requirement of an established pre-confinement relationship. *See id.* § 540.47.

Plaintiff appealed the denial of the visits through the appropriate administrative appeals, but the original decision denying the visitation requests was upheld. Defendant Hurley, who reviewed one of the administrative appeals by Plaintiff, explained that Plaintiff did not meet the criteria for a pastoral visit because Plaintiff had not initiated the request and because "Reverend Rickard is of the Methodist faith, and you are of the Buddhist faith." Plaintiff had registered as a Buddhist for purposes of receiving a special diet at the Penitentiary, but claims that he practices a mixture of both the Buddhist and Christian religions. Although prison policy requires inmates to register under a certain religion for purposes of receiving a special diet, there is no similar registration requirement

for inmates seeking pastoral visits. Defendant Hurley further explained that although he could have waived the requirement of a prior relationship so as to permit the visit as one from a community group, he decided not to do so because of unspecified security concerns. Plaintiff's final administrative appeals were also denied, with the Regional Director of the Federal Bureau of Prisons noting that "[w]hile the requested visits in question may have been generally supportive to you, there is no indication from the documents submitted by you or from our staff interviews that these visits should have been considered primarily pastoral in nature."

Having exhausted all administrative appeals, Plaintiff filed suit in the United States District Court for the District of Colorado. Plaintiff claimed that his religious liberties under the First Amendment and RFRA were violated and that his right to equal protection of the laws under the Fifth Amendment Due Process Clause was also violated. In addition to money damages and a permanent injunction, Plaintiff also requested a temporary restraining order and a preliminary injunction requiring Defendants to allow the pastoral visits.

Plaintiff's request for a preliminary injunction and temporary restraining order was referred to Magistrate Judge O. Edward Schlatter. In his recommendation, Judge Schlatter indicated that Plaintiff had not met the requirements for granting a preliminary injunction or a temporary restraining

order. With respect to the First Amendment claim, Judge Schlatter concluded that Plaintiff had not demonstrated a substantial likelihood of success on the merits. Judge Schlatter noted the difficult constitutional standard for free exercise claims by inmates and concluded that it was unlikely Plaintiff could meet this burden. In addition, Judge Schlatter reasoned that Plaintiff would not suffer irreparable injury absent a preliminary injunction or restraining order because "[Plaintiff's] contact with the religious advisors at issue appears to be at least somewhat tangential to his ability to practice his faith and, again, he is permitted to correspond with these individuals." With respect to Plaintiff's other claims, Judge Schlatter explained that RFRA had been declared unconstitutional by the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507 (1997), and that Plaintiff had not adequately supported his equal protection claim. Thus, Judge Schlatter recommended that Plaintiff's request for a preliminary injunction and temporary restraining order be denied. Plaintiff filed objections to the magistrate's recommendation but the district court adopted Schlatter's recommendation and denied Plaintiff's motion.

## III. DISCUSSION

A district court's denial of a motion for a preliminary injunction is reviewed for an abuse of discretion, legal error, or clearly erroneous factual

findings.[2] *See Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996).  A movant is entitled to a preliminary injunction if he can establish the following: (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.  *See id*.  Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted).

For some requested preliminary injunctions a movant has an "even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction may be issued."  *Id.* The heightened burden applies to preliminary injunctions that (1) disturb the status quo, (2) are mandatory as opposed to prohibitory, or (3) provide the movant substantially all the relief he may recover after a full trial on the merits.  *See id.* at 1098-99.  Because Plaintiff's requested relief would disturb the status quo, the

---

[2]Although Plaintiff requested both a preliminary injunction and a temporary restraining order in the district court, this court only has jurisdiction to consider the denial of the preliminary injunction. *See Populist Party v. Herschler*, 746 F.2d 656, 661 n.2 (10th Cir. 1984) (stating that, absent exceptions which have not been argued in the present case, denials of temporary restraining orders are not appealable).

heightened burden requirement applies. Thus, Plaintiff must demonstrate not only that the four requirements for a preliminary injunction are met but also that they weigh heavily and compellingly in his favor.

Plaintiff, however, would have this court apply neither the heightened standard nor the general standard. Instead, Plaintiff argues a relaxed standard should apply to the requirement that he demonstrate a substantial likelihood of success on the merits if he is first able to satisfy the other three requirements for a preliminary injunction. This court has stated that "[w]hen the other three requirements for a preliminary injunction are satisfied, it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Otero Sav. & Loan Ass'n v. Fed. Reserve Bank of Kansas City, Mo.*, 665 F.2d 275, 278 (10th Cir. 1981) (quotation omitted). This court, however, has previously addressed the interplay between the heightened burden plaintiffs must meet for some requested preliminary injunctions and the relaxed standard for showing a substantial likelihood of success on the merits once the movant has met the other three requirements for a preliminary injunction. In *SCFC* this court stated that "in cases where the requested preliminary injunction alters the status quo . . . the movant will ordinarily find it difficult to meet its heavy burden of showing that the four factors, on balance, weigh heavily and compellingly in its

-8-

favor, without showing a substantial likelihood of success on the merits." *SCFC*, 936 F.2d at 1101 n.11.

## A. Exhaustion of Administrative Remedies

Defendants argue Plaintiff is prevented from claiming he has religious beliefs that incorporate elements of both Buddhism and Christianity because he failed to adequately explain during his administrative appeals his belief in both the Christian and Buddhist religions or express a desire to register as both a Christian and Buddhist. The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A litigant's failure to raise issues during an administrative appeal can constitute a failure to exhaust administrative remedies. *See Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991).

While Plaintiff never specifically claimed that his religious beliefs include elements of both the Buddhist and Christian religions, he was not required to do so to satisfy the exhaustion requirements of the Prison Litigation Reform Act. Plaintiff's lengthy written administrative appeals adequately reveal his claim that the denial of the Christian pastoral visits was frustrating his search for "mundane spiritual help." In addition, although the Penitentiary requires inmates to register

-9-

under a certain religion for purposes of receiving a special diet, both parties concede that the Penitentiary has neither a requirement that an inmate register under a certain religion for purposes of receiving pastoral visits nor a procedure by which to do so. Thus, Plaintiff's failure to express a desire to register as both a Christian and Buddhist can not possibly constitute a failure to exhaust his administrative remedies.

Although Plaintiff, arguing *pro se*, was not as clear about his religious beliefs as he could have been, his maundering was not so severe as to constitute a failure to exhaust his administrative remedies. Plaintiff is therefore not prevented from now premising his claims on religious beliefs which incorporate elements of both Buddhism and Christianity.

**B. Substantial Likelihood of Success on the Merits**

**1. First Amendment Claim**

The district court determined Plaintiff had not demonstrated a substantial likelihood of success on the merits of his First Amendment claim, partly because of the deference given prison officials when evaluating prisoners' constitutional claims. Because the district court's decision was consistent with controlling Supreme Court precedent, the district court's conclusion was neither legal error nor an abuse of discretion.

The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials, even when First Amendment claims have been made. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Although inmates clearly retain their First Amendment right to the free exercise of religion, incarceration necessarily limits that right. *See id.* at 348. The burden on the government to defend its action is substantially less demanding when the prima facie constitutional claim has been made by a prisoner challenging prison policy as opposed to a similar claim made by a citizen who is not incarcerated. *See id.* at 349. Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The Supreme Court in *Turner* identified several factors relevant to whether a prison regulation is reasonably related to legitimate penological interests. First, there must be a valid, rational connection between the legitimate, neutral government interest and the prison regulation, so that the policy is not "arbitrary or irrational." *Id.* at 89, 90. A second factor is whether there are alternate means for the inmate to exercise the asserted constitutional right. *See id.* at 90. Finally, courts should consider whether ready alternatives to the prison regulation are

available and what impact accommodation of the asserted right would have on guards, other inmates, and the allocation of prison resources. *See id.* at 90-91.

Defendant Hurley interprets BOP regulations to impose two requirements for pastoral visits: the prisoner must initiate the request for the visit, and the visitor must be a clergy person from or representative of the inmate's faith. Under the particular facts of this case, it is evident that Plaintiff did not initiate the requests for the pastoral visits.[3]

Defendants explain that permitting pastoral visits only when the inmate initiates the requests aids in both keeping the number of pastoral visits at a manageable level and preventing abuses of the system while also ensuring that inmates are allowed to receive pastoral visits from appropriate persons whom the inmates truly desire to have visit. Defendants claim that keeping the number of pastoral visitors at a manageable level is important because of security concerns and the limited resources of the Penitentiary.

It is well established that prison administrators can enact regulations that restrict the number of visitors an inmate can have for purposes of maintaining

---

[3]It is unnecessary for this court to address this regulatory interpretation beyond its application to the denial of Rickard's request to visit Plaintiff. The evidence before us does not indicate that Plaintiff developed a relationship with Rickard and thereafter initiated his own request for a visit. Nor is there any record evidence to suggest that the warden has interpreted or applied the regulation to forever prohibit a visit by Rickard solely because Rickard initiated the very first request.

institutional security.  *See Pell v. Procunier*, 417 U.S. 817, 827-28 (1974); *Ramos v. Lamm*, 639 F.2d 559, 581 (10th Cir. 1980).  Because the Penitentiary's policy of allowing pastoral visits only when the prisoner initiates the request sufficiently relates to the Penitentiary's goal of allowing prisoners desired pastoral visits while limiting the overall number of visits and preventing abuses of the system, this court cannot conclude as a matter of law that the regulations, as interpreted by Defendants, are "arbitrary or irrational."  *Turner*, 482 U.S. at 90.

Plaintiff argues the requirement that the inmate initiate the request is not reasonably related to the penological interest of limiting the number of visitors because there is no restriction on the number of pastoral visits an inmate can have if the two requirements are met.  Plaintiff's argument, however, ignores the deference courts are to give prison regulations that attempt to strike a balance between prisoner rights and legitimate penological concerns.  *See generally O'Lone*, 482 U.S. at 344-53.  The BOP regulation seeks not only to limit the total number of pastoral visits and prevent abuses of the system, but also to ensure that desired and potentially beneficial pastoral visits are allowed.  A requirement that the prisoner initiate the request for a pastoral visit is rationally connected to these legitimate penological interests.

Under the *Turner* analysis it is relevant that Plaintiff can still communicate with Rickard through written correspondence.  *See id*. at 345, 352 (noting that

although sincere religious beliefs compelled attendance at Jumu'ah service, Muslin prisoner denied Jumu'ah attendance still had opportunity to participate in other Muslim religious ceremonies); *Ramos*, 639 F.2d at 581 (explaining that although prison regulations prevented inmate visits from non-family friends, regulation was reasonable because prisoner was still able to communicate through written correspondence). In addition, Defendants maintain that the pastoral visitation requirements are necessary to prevent abuses of the program; this is the "ripple effect" referred to by the Supreme Court in *Turner*. *See Turner*, 482 U.S. at 90. Finally, Plaintiff has not demonstrated "obvious, easy alternatives" to the pastoral visitation requirements that would accomplish the multiple goals of the current policy. *See id.* Thus, the district court did not commit legal error or abuse its discretion in concluding Plaintiff has not demonstrated a substantial likelihood of success on his First Amendment claim.

**2. RFRA Claim**

The district court determined that Plaintiff had no likelihood of success on his RFRA claim, stating that RFRA had been declared unconstitutional by the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507 (1997). In reaching this conclusion the district court committed legal error.

In *Flores* the Supreme Court considered whether Congress exceeded its power under Section 5 of the Fourteenth Amendment "in enacting the most far-

reaching and substantial of RFRA's provisions, those which impose its requirements on the States." *Id.* at 516. The Court explained that because RFRA, as applied to the states, was not remedial or preventive legislation congruent and proportional to the goal of enforcing constitutional free exercise rights, it exceeded Congress' power to enforce the Fourteenth Amendment. *See id.* at 519-20, 533-34, 536.

The district court concluded *Flores* renders RFRA unconstitutional in the context of Plaintiff's suit against Defendants, who are federal employees in a federal prison. Both parties concede that this court has yet to squarely address whether *Flores* invalidates RFRA as applied to the federal government. Defendants attempt to buttress the district court's decision by citing to an unpublished Tenth Circuit case and a handful of federal district court cases in which *Flores* was interpreted to render RFRA unconstitutional not only in its application to the states but also in its application to the federal government. This court agrees, however, with both the Eighth and Ninth Circuits in their conclusion that *Flores* does not determine the constitutionality of RFRA as applied to the federal government. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 831-33 (9th Cir. 1999); *Christians v. Crystal Evangelical Free Church (In re Young)*, 141 F.3d 854, 858-59 (8th Cir. 1998). It is clear from the analysis in *Flores* that the Court was focusing on Congress' remedial powers to

enforce the Fourteenth Amendment against states and local authorities.  *See*

*Flores*, 521 U.S. at 516-17.  Indeed, that was the only issue before the Court and

it involved a decision by local zoning authorities to deny a church a building

permit.  *See id.* at 512.  The district court decision on appeal stated only that

Congress exceeded its enforcement power under Section 5 of the Fourteenth

Amendment when it enacted RFRA.  *See id*.  Because Congress' ability to make

laws applicable to the federal government in no way depends on its enforcement

power under Section 5 of the Fourteenth Amendment, the *Flores* decision does

not determine the constitutionality of RFRA as applied to the federal government.

*See Sutton*, 192 F.3d at 832 ("Congress acts under [the Enforcement Clause of the

Fourteenth Amendment] only when regulating the conduct of the states.").

Defendants argue that even if *Flores* does not directly control the question

of RFRA's constitutionality as applied to the federal government, the rationale of

the decision makes RFRA invalid in its entirety.  Defendants rely on the Court's

conclusion in *Flores* that "RFRA contradicts vital principles necessary to

maintain separation of powers and the federal balance," arguing the same

concerns apply with equal force to RFRA as applied to the federal government.

*Flores*, 521 U.S. at 536.

Defendants' attempt to extrapolate and rely on isolated language from the

*Flores* opinion is misguided.  Although the Court did mention separation of

powers concerns in *Flores*, this language must be read in the context of the entire opinion and the question being considered. The Court was considering RFRA in its application to the states. *See id.* at 516. Congress relied on its Fourteenth Amendment enforcement power to apply RFRA to the states. *See id.* Congress' enforcement power under the Fourteenth Amendment is limited to remedial or preventive legislation that enforces the substantive provisions of the Fourteenth Amendment. *See id.* at 519-20. The RFRA standard was so out of proportion to any substantive constitutional violation that it could not be considered remedial or preventive legislation. *See id.* at 532-34. Thus, the Supreme Court was compelled to declare RFRA as applied to the states unconstitutional; a contrary ruling would have effectively allowed Congress to "determine what constitutes a constitutional violation." *Id.* at 519. Such a result would, of course, "contradict[] vital principles necessary to maintain separation of powers." *Id.* at 536.

These separation of powers concerns the Court expressed in *Flores*, however, do not apply to RFRA as applied to the federal government. Congress' power to apply RFRA to the federal government comes not from its ability to enforce the Fourteenth Amendment but rather from its Article I powers. *See* H.R. Rep. No. 103-88, at 17 (1993) ("Finally, the Committee believes that Congress has the constitutional authority to enact [RFRA]. Pursuant to Section 5 of the Fourteenth Amendment and the Necessary and Proper Clause embodied in Article

I, Section 8 of the Constitution, the legislative branch has been given the authority to provide statutory protection for a constitutional value . . . .").  That the RFRA standard for suits against the federal government is more protective than what the Constitution requires does not make the statute unconstitutional: "Congress has often provided statutory protection of individual liberties that exceed the Supreme Court's interpretation of constitutional protection." *In re Young*, 141 F.3d at 860; *see also United States v. Marengo County Comm'n*, 731 F.2d 1546, 1562 (11th Cir. 1984) ("[C]ongressional disapproval of a Supreme Court decision does not impair the power of Congress to legislate a different result, as long as Congress had that power in the first place.").  Thus, the separation of powers concerns expressed in *Flores* do not render RFRA unconstitutional as applied to the federal government.[4]

Defendants maintain that even if RFRA as applied to the federal government is constitutional, it can not be severed from the portion of RFRA declared unconstitutional in *Flores*.  It is well established that when a portion of a statute is declared unconstitutional the constitutional portions of the statute are

---

[4]Defendant's do not challenge Congress's Article I power to apply RFRA to the federal government.  Nor is it necessary in the resolution of this case to consider Congress's ability to use powers other than its enforcement power in the Fourteenth Amendment to apply RFRA to the states in certain circumstances, as it has recently done in the Religious Land Use and Institutionalized Persons Act of 2000, Pub. L. No. 106-274, 114 Stat. 803 (codified at 42 U.S.C. § 2000cc).

presumed severable "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not." *I.N.S. v. Chadha*, 462 U.S. 919, 931-32 (1983) (quotations omitted). Defendants have presented no evidence that Congress intended RFRA to be applied to the federal government only if it was also applied to state and local governments. The invalid portion of RFRA does not alter the structure of RFRA, it simply prevents the application of the statute to a certain class of defendants. Thus, RFRA as applied to the federal government is severable from the portion of RFRA declared unconstitutional in *Flores*, and independently remains applicable to federal officials. *See In re Young*, 141 F.3d at 859 (reaching the same conclusion); *see also Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) ("A court should refrain from invalidating more of the statute than is necessary. . . . Whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid." (quotations omitted)).

The district court also held that Plaintiff had not sufficiently demonstrated "the restrictions he complains of place a substantial burden on his ability to practice his faith." Because this conclusion serves as an alternate basis for affirming the district court's ruling that Plaintiff had not demonstrated a substantial likelihood of success on his RFRA claim, this court must also review

that basis for legal error, clearly erroneous factual findings, or an abuse of discretion.

RFRA provides that "[g]overnment shall not substantially burden a person's exercise of religion."  42 U.S.C. § 2000bb-1(a).  Thus, a plaintiff establishes a prima facie claim under RFRA by proving the following three elements: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion.  *See id.*; *Werner v. McCotter*, 49 F.3d 1476, 1479 n.1 (10th Cir. 1995) (noting that a plaintiff's religious belief must be sincerely held).  Since the district court's ruling, Congress has passed the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), Pub. L. No. 106-274, 114 Stat. 803 (codified at 42 U.S.C. § 2000cc).  In RLUIPA, Congress amended certain provisions of RFRA, including the definition of "exercise of religion." *See id.* §§ 7(a)(3), 8(7)(a).  The term "exercise of religion" was previously defined in RFRA as "the exercise of religion under the First Amendment to the Constitution." *See* 42 U.S.C. § 2000bb-2(4) (1999).  RLUIPA amended RFRA, however, so that "exercise of religion" now means "religious exercise, as defined in [42 U.S.C. §] 2000cc-5." *Id.* § 2000bb-2(4).  "[R]eligious exercise" is defined in 42 U.S.C. § 2000cc-5(7)(A) to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."

Plaintiff does not claim the requested pastoral visits were required by his religious beliefs. Under the definition of "religious exercise" in 42 U.S.C. § 2000cc-5(7)(A), however, a religious exercise need not be mandatory for it to be protected under RFRA.[5] Plaintiff maintains that his desire to study Christianity and practice Christian prayer necessitated visits by Christian pastors, and that Reverend Rickard was particularly appropriate because of his experience as a Christian missionary in Japan, Plaintiff's native country. Pastoral visits of this nature are protected activities under RFRA, particularly in light of the new

---

[5]Defendants argue the judicial presumption against retroactive legislation prevents consideration of the amendments to RFRA. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994). This appeal arises from the district court's denial of Plaintiff's motion for a preliminary injunction based primarily on the conclusion that Plaintiff had not demonstrated a substantial likelihood of success on the merits. Although Plaintiff does request compensatory and punitive damages in his complaint, the primary relief requested is a permanent injunction preventing Defendants from denying the pastoral visits. When the plaintiff's request for relief is a prospective injunction, application of new or amended statutes is not a retroactive application of the law. *See id.* at 273-74; *Adarand Constructors, Inc. v. Slater*, 228 F.3d 1147, 1158 (10th Cir. 2000). Indeed, this court has a responsibility to consider the law currently in force when the plaintiff seeks prospective relief. *See Adarand*, 228 F.3d at 1158 ("To ignore intervening changes in the statutory and regulatory framework underlying this litigation would be to shirk our responsibility to strictly scrutinize the real-world legal regime against which Adarand seeks prospective relief."). If Plaintiff demonstrates a substantial likelihood of success on his injunctive claims, which must be considered in light of the amendments to RFRA, he has demonstrated a substantial likelihood of success on the merits of his claim, thus satisfying this component of the preliminary injunction analysis.

definition of "exercise of religion" adopted in RLUIPA.  *See id.* § 2000cc-5(7)(A).

Because Plaintiff's request for pastoral visits appear at this initial stage of the litigation to be a protected religious exercise, and because Defendants do not challenge the sincerity of Plaintiff's religious beliefs, Plaintiff need only prove that the denial of the pastoral visits was a "substantial burden" on his "exercise of religion" in order to show a substantial likelihood of success on the RFRA claim. Plaintiff has argued that the denial of pastoral visits from Reverend Rickard is a "substantial burden" because Reverend Rickard is particularly well-suited to provide religious assistance to Plaintiff.  Reverend Rickard, Plaintiff explains, is a Christian minister who is also familiar with the spiritual culture of Japan, Plaintiff's homeland.  If Plaintiff is able to prove these allegations with evidentiary support, he will have satisfied his prima facie burden to prove that the denial of the visits was a "substantial burden" under RFRA, which adopts a protective standard for prisoner religious rights.  *See generally* 139 Cong. Rec. S14,465 (daily ed. Oct. 27, 1993) (statement of Sen. Hatch) ("[E]xposure to religion is the best hope we have for rehabilitation of a prisoner.  Most prisoners, like it or not, will eventually be returning to our communities.  I want to see a prisoner exposed to religion while in prison.  We should accommodate efforts to bring religion to prisoners."); *id.* at S14,466 (statement of Sen. Dole) ("[I]f religion can help just a handful of prison inmates get back on track, then the

inconvenience of accommodating their religious beliefs is a very small price to pay."); *id.* (statement of Sen. Hatfield) ("Mr. Colson's prison ministries group, which has successfully rehabilitated many prisoners, has been denied access to prisoners in Maryland . . . who did not identify themselves as [P]rotestants. . . . [This is an] example[] of the need for us to pass this bill without this amendment [which would exclude prisons from RFRA]."); *cf. Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993) (finding that the opportunity to engage in private prayer was not an adequate alternative to denial of access to an Orthodox Jewish rabbi, denial of the ability to congregate with other Orthodox Jews for prayer and discussion, and denial of a kosher diet).  Plaintiff has not, however, submitted any evidence, in the form of affidavits or otherwise, supporting his contention concerning the particular attributes that make Reverend Rickard so well-suited for Plaintiff. Thus, this issue must be remanded to allow Plaintiff an opportunity to provide evidentiary support for his claim.[6]

------

[6]Although this opinion has referred solely to Reverend Rickard in discussing Plaintiff's desire to have pastoral visits by three former Christian ministers who served in Japan as missionaries, the "substantial burden" analysis requires a more precise discussion.  Plaintiff would like pastoral visits from all three ministers.  Plaintiff has not, however, demonstrated how each of the ministers could provide religious counseling unique from the others.  Thus, at this point, Plaintiff has advanced arguments that, if proven, would establish a right under RFRA to visits from only one of the three ministers.  Until Plaintiff demonstrates an adequate justification for receiving visits from all three ministers, there is not a "substantial burden" on Plaintiff's "religious exercise" by allowing Plaintiff to visit with only one of the three Christian ministers.  Plaintiff

Defendants argue that even if Plaintiff can establish a prima facie claim under RFRA, the prison has a "compelling government interest" in denying the requested pastoral visits. Once a plaintiff establishes a prima facie claim under RFRA, the burden shifts to the government to demonstrate that "application of the burden" to the claimant "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). Although the Supreme Court in *Turner* relaxed the government's burden when a prisoner brings a free exercise claim under the First Amendment, neither the text nor legislative history of RFRA suggest that a relaxed standard applies to the government's burden when a prisoner makes a RFRA claim. *See Jolly v. Coughlin*, 76 F.3d 468, 475 (2d Cir. 1996) ("[T]he legislative history of RFRA makes clear that the compelling interest test is to apply to free exercise claims by prison inmates."); Douglas Laycock, *Interpreting the Religious Freedom Restoration Act*, 73 Tex. L. Rev. 209, 239-43 (1994) (explaining how various amendments to RFRA that sought to prevent prisoners from having a claim under RFRA or that would have lessened the government's burden under RFRA were considered and rejected). Thus, a different analysis of the government's burden is called for under RFRA as opposed to a constitutional claim brought by a prisoner after *Turner*.

can attempt to make such a showing on remand.

Under the *Turner* analysis, a court is to consider whether the prison regulation is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Under RFRA, however, a court is to consider whether the "*application* of the burden" to the claimant "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (emphasis added). Thus, under RFRA, a court does not consider the prison regulation in its general application, but rather considers whether there is a compelling government reason, advanced in the least restrictive means, to apply the prison regulation to the individual claimant.

This is not to say, however, that prison officials do not have a compelling interest under RFRA in maintaining institutional safety and order. *See* 139 Cong. Rec. S14,468 (daily ed. Oct. 27, 1993) (statement of Sen. Hatch) ("Prison officials clearly have a compelling interest in maintaining order, safety, security, and discipline."). Defendants argue compelling security concerns involving Plaintiff justify the application of the prison regulations to Plaintiff. Although the district court analyzed the prison regulations under the *Turner* test, it did not consider the more demanding analysis of government interests required by RFRA. In addition, although Defendants have addressed this argument, Plaintiff has not

been afforded an opportunity to respond to Defendants' argument.[7] It would thus not be proper for this court to consider whether Defendants have met their "compelling interest" burden under RFRA. The resolution of this issue, if necessary, is remanded to the district court.

### 3. Equal Protection Claim

The district court determined that Plaintiff had not demonstrated a substantial likelihood of success on the merits of his Equal Protection Claim. Plaintiff has made no argument on appeal to convince this court that the district court made clearly erroneous factual findings, abused its discretion, or legally erred in arriving at this conclusion.

### 4. Qualified Immunity

Defendants assert Plaintiff cannot demonstrate a substantial likelihood of success on any of his claims because they are entitled to qualified immunity. Qualified immunity, however, does not apply to claims for equitable relief. *See Cannon v. City & County of Denver*, 998 F.2d 867, 876 (10th Cir. 1993). The primary relief Plaintiff requests is a permanent injunction preventing Defendants from denying the pastoral visits. If Plaintiff is able to demonstrate a substantial

---

[7]Defendants made this argument in their supplemental briefs addressing the amendments to RFRA by RLUIPA. Because these briefs were submitted simultaneously, Plaintiffs has not had an opportunity to respond to this argument. *See Kikumura v. Hurley*, No. 99-2184 (10th Cir., order filed Oct. 27, 2000).

likelihood of success on his RFRA claim for injunctive relief, to which qualified immunity does not apply, he will have satisfied this component of the preliminary injunction analysis.

### C. Irreparable Injury

The district court further held that "there is no indication that Mr. Kikumura will suffer irreparable injury absent an injunction." A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. *See Tri-State Generation & Transmission Assoc., Inc., v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1354 (10th Cir. 1989). Plaintiff claims he will be irreparably harmed because monetary relief will not properly redress previous denials of the pastoral visits. "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995). Similarly, courts have held that a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA. *See Jolly*, 76 F.3d at 482 ("[A]lthough the plaintiff's free exercise claim is statutory rather than constitutional, the denial of the plaintiff's right to the free exercise of his religious beliefs is a harm that cannot be adequately compensated monetarily."); *cf. Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981) ("When the evidence

shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown.").  Because the relief available to Plaintiff after trial would not adequately compensate him for the alleged violations of his religious rights, the district court committed legal error in holding Plaintiff had not satisfied the irreparable injury prong of the preliminary injunction analysis.

### D. Balancing of the Injuries/Public Interest

The district court did not discuss the third and fourth prongs of the preliminary injunction test.  This court therefore has no occasion to examine these issues, and leaves their resolution, if necessary, to the district court on remand.

## IV. CONCLUSION

For the reasons stated above, this court **affirms** in part, **reverses** in part, and **remands** to the district court for further proceedings consistent with this opinion.

No. 99-1284, <u>Kikumura v. Hurley</u>

**HOLLOWAY, Circuit Judge, concurring and dissenting:**

I am in agreement with much of the Majority Opinion concerning the

Religious Freedom Restoration Act (RFRA). In particular, I agree with that

opinion that the district court was in error in stating that RFRA had been declared

unconstitutional by <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997). <u>Flores</u> did not

determine the constitutionality of the RFRA as applied to the federal government;

the Court there decided that Congress exceeded its power to enforce the

Fourteenth Amendment as applied to the States. Moreover, I agree with the

Majority Opinion that RFRA is constitutional as applied to the federal

government, and that such portion of the statute can and should be severed from

the portion of RFRA declared unconstitutional in <u>Flores</u>. Therefore I am in

agreement that we should apply the requirement of RFRA that "Government shall

not substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-

1(a). I further agree with the Majority Opinion in remanding the RFRA claim, as

discussed below.

However, I am unable to join the analysis of the Majority Opinion

concerning the First Amendment free exercise claim of Plaintiff Kikumura. As

recognized in <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987), protective measures for

security in the prison context must be "reasonably related to legitimate

penological interests." I have a fundamental difference with the Majority Opinion

concerning application of the Regulation in question here, 28 C.F.R. § 548.19. My concern is that the Regulation imposes a strict limitation on pastoral visits to those from clergy or representatives of an inmate's one declared faith. That to me is an impermissible restriction because it is not "reasonably related to legitimate penological interests." Turner, 428 U.S. at 89.

Therefore, I cannot agree to uphold the regulation banning all pastoral visitors of other faiths. Holding such a broad ban invalid under the Turner standard as not reasonably related to legitimate penological interests does not violate the teaching of O'Lone v. Shabazz, 482 U.S. 342, 353 (1987), not to substitute our judgment on institutional administration for that of "those charged with the formidable task of running a prison."

The Majority Opinion correctly notes that among the factors identified by the Supreme Court for determining whether a regulation is reasonably related to a legitimate penological interest is whether there are obvious alternatives to the prison's regulation. Turner, 482 U.S. at 91. I believe that in this case such obvious alternatives are readily available to the Defendants; if the Defendants are troubled by the number of religious visits sought, or by information about the persons seeking to contact inmates as clergy visitors, there are obvious, reasonable alternative measures which can afford straightforward protections. For instance, the Defendants can limit the number and frequency of pastoral visits

to those which the inmate favors or the Defendants can limit the number and frequency of visits to levels they deem reasonable to maintain security. Additionally, the clergy seeking to make pastoral visits can be scrutinized for any potentiality of danger. Indeed, the Regulation itself notes the availability of such protective measures by providing in § 548.19(a) that the "chaplain may request a NCIC check and documentation of such clergyperson's or faith group representative's credentials."

Here, instead of using these recognized alternatives, the Defendants' policy is to impose a general ban on pastoral visitors not qualifying as representatives of the inmate's one declared faith. That broad ban reflects an "undifferentiated fear or apprehension" without any evidentiary background for the imagined threat. Cf. Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503, 508 (1969) (invalidating student arm band prohibition based on "undifferentiated fear or apprehension" of disturbance as not sufficient to overcome First Amendment freedom of expression).

I find no vice in a requirement that an inmate identify the faith with which he is affiliated as part of the procedure to request pastoral visits. Thus I do not suggest striking down that requirement. My objection is with what follows – the unjustified use of that identification of the inmate's faith as a means of restricting to that one faith those from whom pastoral visits or counseling is permitted and

the banning of all other pastoral visitors.  Where, as here, the enrichment of other religious support is desired, the restriction prohibiting such support makes no sense in light of "the existence of obvious easy alternatives" which serve the same security interests suggested by the Defendants and which the Supreme Court has determined "may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns."  Turner, 482 U.S. at 90.

Turner teaches that:

> if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

482 U.S. at 91; see also Lile v. McKune, 224 F.3d 1175, 1191 (10th Cir. 2000) (stating that a court should look , inter alia, to "whether there are obvious, easy-to-implement alternatives that would accommodate the prisoner's right at little cost to valid penological interests"); Abu-Jamal v. Price, 154 F.3d 128, 135 (3d Cir. 1998) (holding defendant was "likely to show that the Department's discriminatory application of the business or profession rule to his writing is an exaggerated response to the Department's security objectives because there are obvious easy alternatives to address the Department's concerns"); Mauro v. Arpaio, 147 F.3d 1137, 1144 (9th Cir. 1998) ("The availability of 'obvious, easy' alternatives that could be implemented at a 'de minimis' cost [weighs] against the

reasonableness of a regulation."); Thomas v. Gunter, 32 F.3d 1258, 1260 (8th Cir. 1994); Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993) ("We emphasize that the fourth Turner factor is not a 'least restrictive alternative" test, but rather it allows an inmate to point to an alternative that fully accommodates the prisoners' rights at de minimis cost to valid penological interests as evidence that a restriction is not reasonable.").

This circuit's opinion in Mann v. Reynolds, 46 F.3d 1055 (10th Cir. 1995), is instructive. It concerned a challenge brought by state inmates to a prison regulation prohibiting death row and maximum security prisoners from having "barrier-free or contact visits" with counsel, on the ground that it violates the inmate's rights under the Sixth and Fourteenth Amendments. Id. at 1056. Applying the four-factor Turner test, this court found "a lack of rationality in the denial of contact visits between Inmates and their counsel" since the prison allowed those same inmates "unfettered personal contact with virtually all those with whom they interact except their lawyers." Id. at 1060. We declared:

> Thus, we find it disturbing in the Turner context the defendants have not provided an explanation why they have singled out attorneys for the restricted contact. Aside from the isolated occasions when cigarettes, chewing gum, pens, and paper clips have been unwittingly passed by uninitiated lawyers to Inmates, defendants were unable to provide any evidence the restrictions on contact were reasonably related to prison security. When this default is coupled with the overlay of the "blanket adversarial" attitude of the defendants specifically towards OIDS attorneys and the lack of restriction on contact between Inmates and others, Turner suggests the limitation

-5-

on contacts between lawyers and clients is not related to a legitimate penological interest.

Id. at 1060-61 (emphasis added). Likewise here the Defendants have not provided evidence that pastoral visitors who are not of the same one declared faith as the Plaintiff present any threat to prison security because of their faith. As noted, other concerns about those pastors as a security threat are fully addressed by other measures.

Accordingly, I must dissent from the Majority Opinion's holding that Plaintiff Kikumura has not demonstrated a substantial likelihood of success on his First Amendment claim; but, as noted, I agree with the Majority Opinion that Plaintiff should have an opportunity to prove his allegations that Reverend Rickard is well suited to provide religious assistance to Plaintiff and to consider the Defendants' showing on security interests under the standard imposed on the Government under RFRA.[1]

Turning to Plaintiff Kikumura's RFRA claim, I am in agreement with the analysis and disposition made in the Majority Opinion. It notes that RFRA provides that "Government shall not substantially burden a person's exercise of

---

[1] I am mindful that if the Plaintiff prevails on his First Amendment free exercise claim it may not be necessary to go further to consider his RFRA claim. By the enactment of RFRA Congress has extended enlarged protection for the free exercise of religion. Not being in the majority, it seems proper to me to state my views on both the First Amendment claim and the statutory RFRA claim.

religion." 42 U.S.C. § 2000bb-1(a). It also notes the passage of the Religious Land Use and Institutionalized Persons Act of 2000, codified at 42 U.S.C. § 2000cc. The latter statute amended the RFRA and its definition of "exercise of religion" so that the term now means "any exercise of religion, whether or not compelled by, or central to a system of religious belief." I join the Majority Opinion in remanding the RFRA issue to allow the Plaintiff Kikumura an opportunity to provide evidentiary support for his RFRA claim. If Plaintiff is able to prove his allegations that Reverend Rickard is well suited to provide religious assistance to Plaintiff, he will have shown a basis for his claim that denial of pastoral visitation by Reverend Rickard is a substantial burden to Plaintiff's exercise of religion. I am agreeable to the remand for this purpose and so that the Defendants may present any showing they may have on security issues which they claim to be involved.

There remain the issues of the Plaintiff Kikumura's claim of infringement of his equal protection rights and the Defendants' qualified immunity defense. I join the Majority Opinion in holding that Plaintiff has not demonstrated a substantial likelihood of success on his equal protection argument, and in the holding that the qualified immunity defense does not apply to claims for equitable relief.

No. 99-1284, <u>Kikumura v. Hurley</u>

**EBEL, Circuit Judge, concurring:**

I am in general agreement with the majority opinion. I write separately only to express my disagreement with the majority's conclusion that "[i]f Plaintiff is able to prove these allegations with evidentiary support, <u>he will have satisfied his prima facie burden</u> to prove that the denial of the visits was a 'substantial burden' under RFRA." Slip op., <u>supra</u>, at 22 (emphasis added).

Whether a regulation operates as a <u>substantial</u> burden on a person's exercise of religion is a factual question. I am not prepared to say, on the skeletal record before us, that the pastoral-visit regulations constitute a substantial burden in this case. Plaintiff has explained that Reverend Rickard's familiarity with Japan and Japanese spiritual practices makes him a particularly appropriate choice as Plaintiff's pastor. However, the record does not establish why other Christian ministers would not be adequate in the absence of knowledge of Japanese practices nor does the record establish whether the Defendants would grant Plaintiff pastoral access to other ministers whose counseling would be substantially similar to that offered by the ministers Plaintiff has requested. In short, the record does not yet establish that it would be a "substantial burden" to Plaintiff's religious exercise if he were required to resort to Christian counseling from ministers other than Reverend Rickard and the other registered ministers.

Because this is an intrinsically fact-based question, and there has been no opportunity for the parties to develop these facts, I believe it is inappropriate for us to rule on the issue as a matter of law at this time. We cannot determine what would be a substantial burden without the benefit of seeing a full record. Since we are remanding anyway for a balancing analysis, I would also remand to the district court for it to determine whether there is a substantial burden in the first instance, without prejudging the issue.