FILED
United States Court of Appeals
Tenth Circuit

June 24, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WAHIID MUJAHEED ALAMIIN,

Plaintiff-Appellant,

v.

DEBBIE MORTON,

Defendant-Appellee,

and

RICHARD TINKER, Chaplain; EDWIN
CARNS; MELISSA HALVORSON;
DAVID MILLER, LEO BROWN,

Defendants.

No. 12-6153
(D.C. No. 5:08-CV-01371-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit
Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Wahiid Mujaheed AlAmiin, a Muslim prisoner in the custody of the Oklahoma Department of Corrections (ODOC), appeals the district court's judgment in favor of ODOC employee Debbie Morton on two claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc-1(a), 2000cc-2. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## *Background*

### A. Legal Background

RLUIPA prohibits a government from "impos[ing] a substantial burden on the religious exercise" of a prisoner "unless the government demonstrates that imposition of the burden on that person . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Accordingly, a prisoner bringing a RLUIPA claim "must demonstrate he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010). Once the prisoner has satisfied this requirement, "the burden of proof shifts to the defendants to show the substantial burden results from a 'compelling governmental interest' and that the government has employed the 'least restrictive means' of accomplishing its interest." *Id.* at 1318.

- 2 -

## B. Factual Background

Mr. AlAmiin is incarcerated at Lawton Correctional Facility (LCF), a private correctional facility that contracts with ODOC. Ms. Morton, as the ODOC Director's designee to the Administrative Review Authority, enforced ODOC policy in handling numerous grievances filed by Mr. AlAmiin.

This appeal concerns two requests arising from Mr. AlAmiin's practice of Islam. First, he requested a halal or a kosher diet, which was denied because ODOC did not provide a halal meal option and allowed only Jewish, Messianic Jewish, and House of Yahweh prisoners to request a kosher diet. Second, he requested the ability to possess prayer oil in his cell and on his person. This request was denied because ODOC policy limits prisoners' possession of religious perfumes and oils to a small vial to be kept and used only in the designated communal area for worship and storage. When Mr. AlAmiin sued, among other claims, he alleged that Ms. Morton's enforcement of ODOC's halal-meal and prayer-oil policies imposed a substantial burden on his religious exercise in violation of RLUIPA.

During the litigation, ODOC adopted a halal-meal option for Muslim inmates. In addition, pursuant to a settlement agreement between Mr. AlAmiin and other defendants in the litigation, the district court entered an injunction requiring that while he is housed at LCF, Mr. AlAmiin shall be served a halal diet that is prepared and served in conformance with ODOC's policy regarding kosher meal preparation and service. Ms. Morton contended that these developments mooted the halal-meal

- 3 -

claim. In response, Mr. AlAmiin disputed the adequacy of the handling and preparation procedures set forth in the new halal-meal policy. The district court agreed with Ms. Morton and dismissed the halal-meal claim against her as moot. It also held that to the extent that Mr. AlAmiin claimed the new policy was insufficient, he would have to exhaust his administrative remedies before pursuing litigation.

The prayer-oil claim proceeded to summary judgment. The district court concluded that the undisputed facts established that ODOC's restriction on in-cell and personal possession of prayer oil served a compelling governmental interest in maintaining prison security and represented the least restrictive means of furthering that interest. Accordingly, the district court entered judgment for Ms. Morton on the prayer-oil claim.

*Analysis*

A. Halal-Meal Claim

Mr. AlAmiin argues that despite the adoption of the halal-meal policy and the entry of the injunction, the halal-meal claim against Ms. Morton should be allowed to proceed. Having reviewed the issue of mootness de novo, *see Faustin v. City & Cnty. of Denver*, 268 F.3d 942, 947 (10th Cir. 2001), we affirm the dismissal.

"Article III delimits the jurisdiction of federal courts, allowing us to consider only actual cases or controversies." *Abdulhaseeb*, 600 F.3d at 1311 (internal quotation marks omitted). "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world."

- 4 -

*Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (internal quotation marks omitted).

The only relief available to Mr. AlAmiin under RLUIPA is injunctive relief against Ms. Morton in her official capacity. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011) (holding that states have not waived their sovereign immunity against suits for money damages under RLUIPA); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("[T]here is no cause of action under RLUIPA for individual-capacity claims."). But the policy underlying the denial of his halal-meal requests has been amended, and thanks to the injunction entered in his favor against other defendants in this litigation, Mr. AlAmiin now has what he originally sought— LCF will provide him with halal meals that are prepared and served according to kosher standards. Given that the burden on Mr. AlAmiin's religious exercise has been lifted, and the only available relief against Ms. Morton is prospective, there is nothing to be gained in the real world by continuing to litigate the halal-meal claim.[1] *See, e.g.,* 42 U.S.C. § 2000cc-3(e) (providing that "[a] government may avoid the preemptive force" of RLUIPA by eliminating the substantial burden imposed by a policy or practice, including "by changing the policy or practice" or "by providing exemptions from the policy or practice"); *U.S. Dep't of Agric.*, 414 F.3d at 1212 ("By

---

[1] Although Mr. AlAmiin notes that it is within ODOC's power to transfer him away from LCF, it is speculative whether he would be transferred or whether he would then receive a diet that would substantially burden his religious exercise. Further, claims based on any such events would have to be administratively exhausted before being litigated. *See* 42 U.S.C. § 1997e(a).

eliminating the issues upon which this case is based, adoption of the new rule has rendered the appeal moot.").

Moreover, even if the claim were not moot, it still could not proceed in this litigation. As the district court recognized, Mr. AlAmiin's current contentions, which focus on the suitability of ODOC's new halal-meal policy, are qualitatively different than the issues he administratively exhausted, which concerned ODOC's flat denial of his request for a halal or a kosher diet. Before challenging the adequacy of the new halal-meal policy through litigation, Mr. AlAmiin must exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a).

### B. Prayer-Oil Claim

Mr. AlAmiin asserted that ODOC's policy regarding prayer oils substantially burdens his ability to pray, as his beliefs require that he purify and anoint himself with oil before each of the five daily prayers required of Muslims. Ms. Morton did not challenge his showing of substantial burden, but instead argued that ODOC's prayer-oil policy is the least restrictive means of achieving a compelling governmental interest. The district court agreed with Ms. Morton. We review the grant of summary judgment de novo. *Abdulhaseeb*, 600 F.3d at 1311.

*Compelling Governmental Interest*

Ms. Morton identified four interests in restricting the use and possession of prayer oils, all having to do with prison security: (1) scented oil masks the scent of drugs and contraband; (2) oil facilitates sexual activity; (3) oil makes it more difficult

to physically control inmates because they may coat themselves and cell surfaces with it; and (4) oil is used as a bartering item with inmates unable to purchase it. On appeal, Mr. AlAmiin argues that there are genuine issues of material fact regarding the legitimacy of these security concerns. Particularly, he points out that ODOC allows in-cell possession of up to fourteen ounces of baby oil, which can also be used to engage in the behaviors that ODOC identifies. We need not consider all of Ms. Morton's proffered rationales, however, because at the very least, the record supports the rationale that the prayer-oil policy serves the compelling governmental interest of enhancing prison security through minimizing contraband.

Ms. Morton presented evidence that ODOC performed tests using prayer oils obtained from an ODOC-approved provider and ODOC drug dogs, and that in the tests the oils hampered the dogs' ability to detect drugs. An affidavit from ODOC's Deputy Director of Institutions Ken Klingler averred that the "use of drug dogs is a vital tool" to ODOC because "[t]he ingenuity of inmates to find places and ways to hide contraband is nearly beyond comprehension to those outside of DOC" and "[w]ithout the effective use of drug dogs, drugs would go undetected." Aplt. App. Vol. 2 at 645. All of this evidence indicates that in banning in-cell possession of prayer oils ODOC acted on facts, rather than "mere speculation, exaggerated fears, or post-hoc rationalizations," *Abdulhaseeb*, 600 F.3d at 1318 (internal quotation marks omitted), and requires the conclusion that ODOC's policy banning in-cell possession of prayer oil furthers a compelling governmental interest. *See also Hammons v.*

*Saffle*, 348 F.3d 1250, 1255 (10th Cir. 2003) (holding, in First Amendment challenge to ODOC's in-cell ban on prayer oils, that "allowing inmates to purchase the oils but to only possess them outside their cells in designated, supervised areas did further appellees' penological interests"). Given the context-specific nature of ODOC's drug-dog tests and the deference the federal courts must accord prison administration in matters of prison security, *see Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005), Mr. AlAmiin's more generalized evidence regarding drug dogs' ability to distinguish between scents does not create a genuine issue of material fact as to Oklahoma's compelling interest.

Mr. AlAmiin also contends that Ms. Morton did not "make any kind of individualized showing of a compelling interest in applying the on-person prayer oil ban to [him]." Aplt. Br. at 20. *See Kikumura v. Hurley*, 242 F.3d 950, 962 (10th Cir. 2001) ("[U]nder RFRA [the Religious Freedom Restoration Act, which contains the same compelling-interest test as RLUIPA], a court does not consider the prison regulation in its general application, but rather considers whether there is a compelling government reason, advanced in the least restrictive means, to apply the prison regulation to the individual claimant."). To the contrary, Ms. Morton presented evidence that it would be infeasible for ODOC to allow selective on-person or in-cell possession of prayer oils. Mr. Klingler's affidavit averred that the very presence of oils in the inmate population creates the risk of bartering and increases the chances of violence, with inmates forcibly taking other inmates' oils. Moreover,

Mr. Klingler stated that there is a risk that inmates might stockpile small amounts of oil to amass a larger quantity. In all of these situations, inmates in possession of oils could then use them in an effort to stymy drug dogs.

*Least Restrictive Means*

As with the compelling-interest element, Mr. AlAmiin argues that Ms. Morton did not sufficiently show that ODOC made an individualized assessment that applying the general policy to him was the least restrictive means of achieving the government's interest. *See Kikumura*, 242 F.3d at 962. As discussed, however, Ms. Morton presented sufficient evidence of the infeasibility of allowing only certain inmates to possess prayer oils on their persons and in their cells.

Mr. AlAmiin also points out that California prisons have allowed in-cell possession of as much as twelve ounces of prayer oil. *See Lewis v. Ollison*, 571 F. Supp. 2d 1162, 1172 (C.D. Cal. 2008) (concluding that rule limiting prisoner to in-cell possession of twelve ounces of prayer oil was not substantial burden on prisoner's religious exercise). The record lacks any evidence regarding California's regulations, however, and the mere fact that California has allowed in-cell possession of prayer oil does not necessarily mean that Oklahoma's decision to restrict in-cell possession cannot qualify as the least restrictive means to achieve its interest.

Finally, Mr. AlAmiin argues that Ms. Morton did not demonstrate that ODOC considered whether less-restrictive policies would adequately further its interest in security. In the district court, he suggested two potential alternatives that would be

less restrictive: (1) allowing the in-cell possession of unscented prayer oil; or (2) allowing him access to his stored prayer oil before prayers five times a day.[2] In analogous circumstances under the Religious Freedom Restoration Act, we have held that "the government's burden is two-fold: it must support its choice of regulation, and it must refute the alternative schemes offered by the challenger, but it must do both through the evidence presented in the record." *United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011).

> [W]e have an obligation to ensure that the record supports the conclusion that the government's chosen method of regulation is least restrictive and that none of the proffered alternative schemes would be less restrictive while still satisfactorily advancing the compelling governmental interests. Therefore, we review the evidence adduced by the district court as part of our de novo consideration of whether the [state's policy or] regulations are the least restrictive means of forwarding the government's compelling interests.

*Id.*

As discussed above, the record evidence supports ODOC's choice of policy. Similarly, it defeats Mr. AlAmiin's proffered alternatives.

Regarding the unscented-oil suggestion, it is unclear that Mr. AlAmiin ever actually sought to possess unscented oils; the record indicates that his grievances and his Amended Complaint concerned scented oils. Further, there is no record evidence

---

[2]    In the conclusion to his appellate brief, Mr. AlAmiin also suggests that he be allowed to mix minute quantities of scented oil with unscented substances such as water or unscented oil. We do not consider this alternative because it is raised for the first time on appeal. *See Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005).

that ODOC's approved prayer-oil providers offer unscented oils. And regarding the alternative of providing access to the communal area before each daily prayer, the evidence shows that ODOC has limited staffing resources that are stretched with every additional duty and that ODOC depends heavily on volunteers to staff religious programs. Given these prison realities, it is not practical to expect ODOC to provide Mr. AlAmiin timely access to the communal worship area five times per day, every day. *See also Hammons*, 348 F.3d at 1256-57 ("[A]ccommodating [prisoner's] need to access his prayer oils five times per day would likely have heavily burdened prison resources and other inmates' religious interests.").

## *Conclusion*

Mr. AlAmiin's motion for leave to proceed without prepayment of costs and fees is granted. Mr. AlAmiin is reminded that he is obligated to continue making partial payments until the entire obligation is paid. Ms. Morton's motion and amended motion to strike are denied. The judgment of the district court is affirmed.

Entered for the Court

Wade Brorby
Senior Circuit Judge