**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 6, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

IGLESIA PENTECOSTAL CASA DE
DIOS PARA LAS NACIONES, INC.;
ISRAEL MEDINA VALDEZ,

      Plaintiffs - Appellants,

v.

ELAINE C. DUKE, Secretary, United
States Department of Homeland Security;
L. FRANCIS CISSNA, Director, U.S.
Citizenship and Immigration Services;
JEFFERSON B. SESSIONS, III, United
States Attorney General; RON
ROSENBERG, Chief of the Administration
Appeals Office of the United States
Citizenship and Immigration Services;
ROSEMARY MELVILLE, Director,
California Service Center, United States
Citizenship and Immigration Services,

      Defendants - Appellees.[*]

No. 16-3265
(D.C. No. 2:15-CV-02612-DDC-GEB)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **BRISCOE**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
_____

[*] Pursuant to Fed. R. App. P. 43(c)(2) Elaine C. Duke is substituted as
Secretary of Homeland Security, L. Francis Cissna, is substituted as Director, U.S.
Citizenship and Immigration Services, and Jefferson B. Sessions, III, is substituted as
United States Attorney General.

[**] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Iglesia Pentecostal Casa De Dios Para Las Naciones, Inc. ("Iglesia"), a Pentecostal church in Kansas City, Kansas, appeals the denial of the visa application it filed on behalf of its music director. Iglesia alleges that one of the visa requirements substantially burdens its religious exercise in violation of the Religious Freedom Restoration Act ("RFRA"). The district court found no substantial burden. Because Iglesia has failed to present a prima facie RFRA claim, we affirm.

## I. BACKGROUND

### A. *R-1 Visa Program*

The Immigration and Nationality Act allows ministers and other religious workers to enter and stay in the United States under a non-immigrant visa, known as an R-1 visa, for up to five years. *See* 8 U.S.C. §§1101(a)(15)(R), 1101(a)(27)(C)(ii); 8 C.F.R. §§ 204.5(m), 214.2(r). To obtain the visa, a religious organization seeking to hire and sponsor an R-1 applicant petitions the United States Citizenship and Immigration Services ("USCIS"). The petitioner must: (1) establish that the R-1 applicant has been a member of the same denomination as the petitioner for at least two years preceding the petition—the "denomination requirement"—8 U.S.C. § 1101(a)(15)(R)(i), and (2) demonstrate its intention and ability to compensate the R-1 applicant—the "compensation regulation"—8 C.F.R. § 214.2(r)(11).[1]

---

[1] Specifically, the petitioner must:

> state how [it] intends to compensate the alien, including specific monetary or in-kind compensation, or whether the alien intends to be self-supporting. In either case, the petitioner must submit

2

Evidence of compensation may include:

> past evidence of compensation for similar positions; budgets showing monies set aside for salaries, leases, etc.; verifiable documentation that room and board will be provided; or other evidence acceptable to USCIS.

*Id.* § 214.2(r)(11)(i). If available, the petitioner must submit IRS documentation, such as IRS Form W-2 or certified tax returns. *Id.* Otherwise, it must submit "comparable, verifiable documentation." *Id.*

### B. *Iglesia's Petition for an R-1 Visa for Mr. Medina-Valdez*

In May 2011, Iglesia petitioned USCIS for an R-1 visa that would authorize its music director, Israel Medina-Valdez, a citizen of the Dominican Republic, to stay in the United States as a temporary religious worker for two years.[2] Mr. Medina-Valdez was then living in the United States under a visitor visa set to expire in August 2011. In its petition, Iglesia confirmed it was "willing and able" to provide Mr. Medina-Valdez a $26,000 annual salary. *See* App. at 985. It also stated that Mr. Medina-Valdez had *not* been a member of its denomination for at least two years.

---

> verifiable evidence explaining how the petitioner will compensate the alien or how the alien will be self-supporting.

8 C.F.R. § 214.2(r)(11)

[2] The petition listed March 1, 2011 to March 1, 2013 as the period of intended employment.

3

## C. *Agency Response*

### 1. **USCIS**

After receiving Iglesia's R-1 visa petition, USCIS requested evidence of Iglesia's ability to meet the denomination and compensation requirements. Iglesia submitted documentation regarding Mr. Medina-Valdez's denomination and its finances, including a copy of its federal tax form (IRS Form 990), bank statements, and a 2010 profit and loss statement. USCIS denied Iglesia's petition on one ground: The church had failed to demonstrate that Mr. Medina-Valdez had been a member of its denomination for at least two years.

### 2. **Administrative Appeals Office**

Iglesia appealed to the Administrative Appeals Office ("AAO"), which affirmed USCIS's denial of the petition because Iglesia had failed to meet the denomination and compensation requirements. It determined that neither Iglesia's R-1 petition nor its financial documents demonstrated its ability to pay a $26,000 annual salary.[3]

In October 2013, Iglesia sued in federal district court to challenge the denial of its petition. The AAO reopened the matter, and Iglesia voluntarily dismissed the federal case. The AAO determined Iglesia *had* met the denomination requirement

---

[3] The AAO noted Iglesia had submitted "an uncertified copy of its unsigned and undated IRS Form 990." App. at 277. In one section of Form 990, Iglesia reported $214,144 in revenue and no expenses. In another section, it reported total program expenses of $474,961. Its 2010 profit and loss statement reflected a net loss of $31,160.85. The AAO concluded that Iglesia had failed to provide reliable or sufficient evidence to demonstrate its ability to pay Mr. Medina-Valdez.

but still had not satisfied the compensation regulation. Iglesia submitted additional evidence, including a balance sheet, bank statements, and profit and loss statements. The AAO again denied the petition, citing insufficient evidence and noting unexplained discrepancies in the visa petition, tax forms, and other documents.

Iglesia filed a motion to reopen with the AAO, arguing that it deserved a RFRA exemption from the compensation regulation because the church believed that contributions from parishioners in the form of "love offerings" would adequately compensate Mr. Medina-Valdez.[4] Iglesia's religious conviction to live "by faith" entailed trusting that the Sunday collections from parishioners would cover the cost of his salary. The amounts were not reflected in the church's financial documents, it explained, because the money collected thus far had gone directly from the parishioners to Mr. Medina-Valdez.

The AAO denied Iglesia's motion. First, it again said Iglesia had failed to show its ability to compensate Mr. Medina-Valdez. Second, it explained it lacked discretion to invalidate the compensation regulation absent a judicial ruling. Third, it denied Iglesia's request for a RFRA exemption because the church had failed to show a substantial burden. *See* ROA, Vol. 1 at 17-18.

---

[4] An additional problem for Iglesia is that USCIS, in its summary of the final rule amending the religious worker visa program that was published in the Federal Register, stated that a petitioner must request a RFRA exemption when it files its visa petition. *See* 73 Fed. Reg. 72,276, 72,283 (Nov. 26, 2008). We do not rely on Iglesia's failure to do so for our decision here.

5

D. *Federal District Court Proceedings*

Iglesia sued in federal district court to challenge the agency's denial of the R-1 visa application under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. It moved for summary judgment, arguing (1) it had demonstrated its ability to pay Mr. Medina-Valdez, and (2) as to RFRA, (a) the compensation regulation violated RFRA, and (b) the AAO wrongly claimed it lacked jurisdiction to grant a RFRA exemption.[5]

The district court affirmed the agency's denial on two grounds: (1) the AAO's decision that Iglesia lacked the ability to pay Mr. Medina-Valdez was not "arbitrary and capricious," and (2) the compensation regulation did not substantially burden Iglesia's religious exercise. The court said the compensation regulation "merely require[d] Iglesia to establish that it is able to compensate [Mr. Medina-Valdez] by submitting 'verifiable evidence.'" *Iglesia Pentecostal Casa De Dios Para Las Naciones, Inc. v. Johnson*, No. 15-CV-2612-DDC-GEB, 2016 WL 3936435, at *10 (D. Kan. July 21, 2016) (quoting 8 C.F.R. § 214.2(r)(11)). The regulation did not interfere with Iglesia's ability to compensate Mr. Medina-Valdez through "love offerings."[6]

---

[5] The district court, citing our decision in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994), treated Iglesia's motion as an appeal of the agency's decision under the APA.

[6] The court also said the AAO lacked discretion to "set aside" the compensation regulation, though it acknowledged that parties may request a RFRA exemption when they petition for a visa. *Iglesia*, 2016 WL 3936435, at *5 n.5.

## II. **DISCUSSION**

Iglesia appeals, arguing (1) the compensation regulation violates RFRA by imposing a substantial burden on the church's religious exercise,[7] and (2) the district court violated the *Chenery* doctrine by affirming the agency's decision on alternative grounds. It has abandoned its contention that it had met the compensation regulation.[8] We hold Iglesia has not alleged facts sufficient to support its RFRA claim, and its *Chenery* argument lacks merit.

### A. *Standard of Review*

Whether a government action substantially burdens a person's religious exercise in violation of RFRA is a legal question we review de novo. *United States v. Friday*, 525 F.3d 938, 948-49 (10th Cir. 2008).[9]

### B. *RFRA*

---

[7] We understand Iglesia to be making an as-applied RFRA challenge to the compensation regulation. To the extent it attempts to make a facial challenge, it fails to allege facts sufficient to state such a claim. *See United States v. Friday*, 525 F.3d 938, 951 (10th Cir. 2008) (holding that a facial challenge under RFRA "is one that contends the statute is impermissible in all, or at least the vast majority, of its intended applications") (brackets and quotations omitted).

[8] Although Iglesia maintains it has demonstrated the ability to compensate Mr. Medina-Valdez, it expressly declines to develop any arguments to that effect on appeal. *See* Aplt. Br. at 9 n.4 ("Plaintiffs maintain that they have . . . show[n] they have the ability to pay Mr. Medina-Valdez. However, because the agency's RFRA violation and the District Court's violation of the *Chenery* doctrine are so plain, Plaintiffs focus their appeal on these issues.")

[9] Iglesia's appellate briefs suggest it is attempting to raise a RFRA claim under the Administrative Procedures Act ("APA"). Aplt. Br. at 2; Aplt. Reply Br. at 8 n. 3; *see* 5 U.S.C. § 702; *but see id.* § 704. Even assuming that this is the proper characterization of the appeal, we would still review the agency's legal conclusion de novo. *See BNSF R. Co. v. U.S. Dep't of Labor*, 816 F.3d 628, 638 (10th Cir. 2016).

7

RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless it demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)-(b).  "[A] plaintiff establishes a prima facie claim under RFRA by proving the following three elements: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion."  *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001); *see also Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1068 (9th Cir. 2008) (en banc) (explaining a RFRA claimant "must present evidence sufficient" to show a substantial burden).

Courts defer to a RFRA claimant's statement of its own belief, so long as it actually holds that belief.  *See Burwell v. Hobby Lobby Stores*, 134 S. Ct. 2751, 2779 (2014) ("[I]t is not for [courts] to say that [a person's] religious beliefs are mistaken or insubstantial.").  But courts determine whether a challenged law or policy substantially burdens religious exercise.  *See Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014); *Kikumura*, 242 F.3d at 961 & n.6.[10]  As such, whether a burden is

    [10] *See also Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1143 (11th Cir. 2016) ("We now consider whether, accepting the plaintiffs' sincere religious beliefs, the [disputed regulation] substantially burdens their religious exercise."); *Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) ("Accepting as true the factual allegations that [plaintiff's] beliefs are sincere and of a religious nature—but not the legal conclusion, cast as a factual allegation, that his religious exercise is substantially burdened . . . ."); *cf. Hobby Lobby*, 134 S. Ct. at 2775 ("Because RFRA applies in these cases, we must

"substantial" under RFRA is a question of law.  *See Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011).

The government impermissibly burdens religious exercise if it:  (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent . . . to engage in conduct contrary to a sincerely held religious belief."  *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 (10th Cir. 2013) (en banc) (citations and quotations omitted), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014).  In making this determination, we consider how the challenged law or policy actually operates and affects religious exercise.  *See Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) (explaining that courts may consider the connection between the action required and the petitioner's beliefs and the extent to which that action interferes with or otherwise affects its religious exercise—all without delving into the beliefs themselves).

## C. *Analysis*

Iglesia's two arguments fail.  First, Iglesia's bare assertion that the compensation regulation impedes its collection and use of love offerings falls short of stating a RFRA violation.  It provides no factual basis that the regulation precludes or

next ask whether the HHS contraceptive mandate 'substantially burden[s]' the exercise of religion.") (citing 42 U.S.C. § 2000bb-1(a)) (alteration in original)).

9

discourages parishioners from making love offerings or using them to pay the music director. USCIS and the AAO denied Iglesia's R-1 visa petition because the church's deficient bookkeeping precluded satisfactory documentation that it met the compensation regulation, not because Iglesia relies on love offerings to provide compensation. Second, Iglesia's *Chenery* doctrine argument lacks merit.

1. **RFRA Substantial Burden**

Iglesia fails to demonstrate that the compensation regulation imposes a substantial burden on its religious exercise.

First, it claims that it "cannot meet [this requirement] unless it stops allowing its congregants to . . . giv[e] a love offering directly to Mr. Medina-Valdez." Aplt. Br. at 14. But the compensation regulation does not prevent or restrict Iglesia's reliance on love offerings to pay Mr. Medina-Valdez. It neither mandates nor precludes any particular method of compensation for church employees. As the Government points out, the regulation requires only that Iglesia provide evidence— be it IRS documentation (e.g., tax returns) or other "verifiable documentation"—of its ability to pay Mr. Medina-Valdez the $26,000 salary that the church stated in its application it was willing and able to provide. *See* Aplee. Br. at 8 ("Iglesia would be free to compensate [Mr. Medina-Valdez] through 'love offerings' as long as it could demonstrate its ability to do so, which it did not."). Iglesia points to nothing in the statute, implementing regulations, or statements by the agency to support its contention that the compensation regulation bars or even dissuades parishioners from contributing love offerings for Mr. Medina-Valdez's benefit. It can obtain an R-1

10

visa while continuing to rely on love offerings, but it still needs to provide documentation of its ability to pay.

Second, Iglesia does not even contend that the requirement or process of documenting its ability to pay in its R-1 visa application substantially burdens its religious exercise. It never explains how "living by faith" is incompatible with documenting the donations before they were sent to Mr. Medina-Valdez or with asking Mr. Medina-Valdez to report the love offering compensation he has received. Instead, Iglesia offers only vague and conclusory assertions that the "kind of proof USCIS now demands" for the compensation regulation conflicts with the way the church and its parishioners have "lived their expression of faith." *See* Aplt. Br. at 13.[11]

Iglesia maintains it cannot provide documentation of previous love offerings because parishioners sent money directly to Mr. Medina-Valdez without the church

---

[11] This case stands in contrast to recent RFRA litigation concerning regulations promulgated under the Affordable Care Act that required group health plans to cover contraceptive services for women. The regulations allowed religious non-profit organizations to opt out of this requirement by notifying their health insurance issuer or the federal government. Non-profit religious employers challenged the regulations, arguing that the opt-out process substantially burdened their exercise of religion. *See Zubik v. Burwell*, 136 S. Ct. 1557, 1559 (2016) (per curiam). Iglesias makes no such argument here that the process to obtain an R-1 visa, including the preparation and submission of documentation to meet the compensation regulation, burdens its religious exercise.

11

making a record. Inadequate bookkeeping doomed Iglesia's R-1 visa petition, not the compensation regulation's alleged interference with love offerings.[12]

## 2. *Chenery* **Doctrine**

The *Chenery* doctrine provides that courts "may not properly affirm an administrative action on grounds different from those considered by the agency." *Ecology Ctr., Inc. v. U.S. Forest Service*, 451 F.3d 1183, 1195 (10th Cir. 2006) (quotations omitted); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("*Chenery II*"). Iglesia argues the district court violated the *Chenery* doctrine by reaching the merits of its RFRA argument when the agency denied relief only on the ground that it "lack[ed] jurisdiction . . . to grant a[] RFRA exemption." Aplt. Br. at 10. There are two problems with this argument.

First, the AAO made a merits determination. It stated that a petitioner seeking a RFRA exemption must demonstrate a "significant burden on . . . religious beliefs or exercise," App. at 17 (quoting 73 Fed. Reg. 72,276, 72,283-84 (Nov. 26, 2008)), and Iglesia had failed to meet that burden, *id.* at 18. The district court affirmed on the same ground, concluding that the compensation regulation did not impose a substantial burden. Further, the AAO never claimed it lacked jurisdiction to grant a

---

[12] Iglesia also contends the compensation regulation burdens religious workers who take a vow of poverty. Aplt. Br. at 14; *see* 72 Fed. Reg. 20442, 20446 (Apr. 25, 2007) (exempting from the compensation regulation religious workers who have "taken a vow of poverty or similarly made a formal lifetime commitment to a religious way of life"). But Iglesia has not supported that Mr. Medina-Valdez has taken a vow of poverty or made a similar lifetime commitment. In any event, it forfeited this argument by failing to raise it in district court and has not argued plain error on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

RFRA exemption. Rather, it said the agency must apply the regulation unless a court holds it invalid. *Id.* at 17 ("Absent [a judicial finding that the regulation violates RFRA], neither the director [of USCIS] nor the AAO has any discretion to set aside any provision of those regulations.").

Second, Iglesia fails to establish that *Chenery* applies to the RFRA issue here. The *Chenery* doctrine applies only to "a determination or judgment which an administrative agency *alone* is authorized to make." *Chenery II*, 332 U.S. at 196 (emphasis added). In other words, the prohibition on judicial consideration of alternate grounds to affirm an agency decision applies only if the issue under review has been entrusted exclusively to agency determination. *See id.*; *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943); *see also INS v. Ventura*, 537 U.S. 12, 16 (2002) (holding that *Chenery* prohibited the reviewing court from making its own judgment about an alien's asylum eligibility—a determination that Congress had "exclusively entrusted to an administrative agency"); *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 304-05 (D.C. Cir. 2015) (explaining that *Chenery* applies to determinations that Congress specifically entrusted to an agency's expertise, not general legal principles like issue preclusion).

Although USCIS determines whether an applicant qualifies for an R-1 visa, the specific issue here—whether the compensation regulation substantially burdens Iglesia's religious exercise—is a "legal determination" that Congress has not "exclusively entrusted" to USCIS. *See Ventura*, 537 U.S. at 16; *Friday*, 525 F.3d at 948-49; *see also*

13

42 U.S.C. § 2000bb-1(C) (providing that a person whose religious exercise has been

burdened "may assert that violation . . . in a *judicial proceeding*" (emphasis added)).[13]

III.  **CONCLUSION**

Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.


Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

[13] Iglesia, having argued substantial burden before the district court, now criticizes that court for deciding that very issue, seemingly "changing positions according to the exigencies of the moment."  *See Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013).  We do not, however, rely on a judicial estoppel ground to affirm.